## S. S. PERRY, JR., V. R. E. L. STRINGFELLOW ET UX.

No. 7413. Decided January 3, 1940.
Rehearing overruled January 31, 1940.
(134 S. W., 2d Series, 1031.)

*Masterson & Bryan, Cleveland Davis* and *J. P. Bryan,* all of Angleton, for plaintiff in error.

Under the facts of the case plaintiffs were entitled to a mandatory injunction. City Natl. Bank v. Folsom, 247 S. W. 591; Hill v. Brown, 237 S. W. 252.

*A. R. Rucks* and *Robt. M. Lyles,* both of Angleton, for defendants in error.

The finding of the court to the effect that the inclosure was sufficient to confine livestock therein and repel livestock therefrom is binding upon the defendant, and that plaintiffs were entitled to the injunction. First Natl. Bank v. Blewett, 89 S. W. (2d) 487; Miller Bros. v. Nigro, 230 S. W. 511; Schroeder v. Rosenbaum, 16 S. W. (2d) 328.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This in an appeal from an order granting a temporary injunction. The action of the trial court was affirmed by the Court of Civil Appeals. The trial court made elaborate findings of fact, which are set out in detail in the opinion of the Court of Civil Appeals. 113 S. W. (2d) 1012. These facts relate lergely to the relative rights of the parties in the subject matter of the controversy, and under the view we take of the case it is wholly unnecessary to set them out here.

In the district court R. E. L. Stringfellow and wife were plaintiffs and S. S. Perry, Jr., was defendant. They will be so referred to here.

The controversy between the parties concerns their respective rights to pasture cattle and horses within an inclosure of some 3600 acres. Neither party pretends to own in fee more than a portion of the lands within the inclosure. Undoubtedly, plaintiff has shown a prior right to possession of a part of the inclosed lands, but admits defendant's right to the use thereof to the extent of some fifteen acres. In addition, it appears that there are perhaps as much as 1500 acres of land within said inclosure that may rightfully be called "commons." It is undisputed that for some years prior to the filing of plaintiffs' petition herein, towit, August 16, 1937, defendant had pastured a considerable number of cattle and horses within said inclosure. It is further undisputed that during the summer months of each year the gates to said inclosure are down and cattle of the general public are left free to graze therein.

The order for temporary injunction entered herein was as follows:

"It is, therefore, ordered, adjudged and decreed by the court that the defendant S. S. Perry, Jr., be and hereby is enjoined and restrained, pending the final determination of this suit, from placing or keeping more than three head of cattle in that inclosure known as the Hudgins Pasture, situated in the F. J. Calvit Survey in Brazoria County, Texas, and about five miles northeast of the Town of Velasco, lying East and abutting State Highway No. 19, North of and abutting the East Union Bayou, bounded on the North by Oyster Creek, and on the East by the Intracostal Canal, and being that tract of land occupied and controlled by plaintiffs, and commonly designated as the S. H. Hudgins Pasture.

"And the said S. S. Perry, Jr., is further enjoined and restrained from in any manner interfering with or attempting to prevent plaintiffs and their employees from expelling from said inclosure any and all cattle placed therein by the defendant S. S. Perry, Jr., in excess of three head of cattle."

■ At a glance it is seen that so far as defendant is concerned, the court has adjudicated his rights to the extent of holding that he can pasture only three head of cattle in said inclosure. In the next place, it is obvious that said order goes far beyond merely holding the situation in status quo pending final hearing. It enjoins defendant from in any manner preventing plaintiffs from expelling defendant's cattle from said land in excess of three head. This by necessary implication authorizes plaintiffs to expell defendant's cattle from the land in question;

and, as defendant is helpless to prevent such action, the result is exactly the same as if defendant had been ordered to remove the cattle himself. At least, the effect is undoubtedly the same as if a mandatory injunction had been issued, in that pending the hearing on permanent injunction it destroys the status quo, rather than maintains it, so far as defendant's cattle are concerned.

In the case of James v. Weinstein & Sons, 12 S. W. (2d) 959, wherein the opinion of the Commission of Appeals was adopted by the Supreme Court, it was said:

"If the effect of the granting of a temporary injunction does more than preserve the status of the property as it had therefore existed, and accomplishes the whole object of the suit, it would be improper for the court to grant same, as the legitimate purpose of the temporary injunction is merely to preserve the existing condition until a final hearing can be had on the merits. The court is without authority to divest a party of property rights without a trial, and any attempt to do so is void."

The opinion in that case clearly demonstrates that in this instance the court has practically determined the merits of the controversy and disposed of the case in all its essential particulars. We, of course, recognize that there are instances where a court, upon hearing for temporary injunction, may restore a possession which has been wrongfully taken, or may require affirmative action in lieu of maintaining the status quo. See for instance the cases of Texas Pipe Line Co. v. Burton Drilling Co., 54 S. W. (2d) 190, and Houston Funeral Home v. Boe, 78 S. W. (2d) 1091. It is evident, however, that this case does not come within any of the exceptions of the above quoted rule.

■ The injunction, in so far as it prevented defendant from putting other cattle in the inclosure, or otherwise disturbing the status quo, was proper; but in so far as it destroyed the status quo as to defendant's cattle, was unauthorized.

The case of Popham v. Wright, 229 S. W. 335, was obviously one in which there had been a hearing upon the merits, because the opinion proceeds upon the theory that the relative rights of the parties had been determined.

The judgments of the Court of Civil Appeals and of the district court are reversed, and the cause is remanded with instruction that the trial court amend his order so as to conform to this opinion.

Opinion adopted by the Supreme Court January 3, 1940.

Rehearing overruled January 31, 1940.