## BATES v. TEXAS ELECTRIC RY. CO. et al.

### No. 14042.

Court of Civil Appeals of Texas. Dallas.

April 22, 1949.

Rehearing Denied May 20, 1949.

Roland Boyd, of McKinney, for appellant.

Burford, Ryburn, Hincks & Ford and Clarence A. Guittard, all of Dallas, for appellees.

YOUNG, Justice.

This suit for injunction was brought by Jack Bates, a holder of 100 shares of Texas Electric Railway Company stock, to restrain appellee interurban company from the substitution of motor line service for its electric railway service between Dallas and Waco; charging that the new and contemplated operation was ultra vires: as in excess of corporate powers; also in violation of our State Anti-Trust Laws and particularly the provisions of Art. 7427, Vernon's Ann.Civ.Sts., defining "monopoly." Appellant's petition for temporary relief was denied, upon hearing, on May 24, 1948. A supplemental petition was then filed on July 28, 1948, claiming development of new facts, which, on further hearing, was overruled on August 30, with result of this appeal. Seasonably and in response to motion of plaintiff, the court made extensive findings of fact and conclusions of law as disclosed by the transcript.

The gist of defendants' sworn answer (and defenses) is sufficiently reflected in the following counter points: That the trial court did not abuse its discretion in denying plaintiff's application for temporary injunction (1) "where plaintiff did not deny by pleadings or evidence the allegations of defendants' sworn answer that plaintiff was not a bona fide stockholder of Texas Electric Railway Company and had not sued in good faith to protect any interest of his own as stockholder, but was acting as the tool and puppet of a competitor, Southwestern Greyhound Lines, Inc., and was seeking the injunction for the sole purpose of preventing and delaying the substitution

of bus service for electric railway service between Dallas and Waco"; (2) "because plaintiff did not sustain the burden of showing that he has sought redress of his complaint with the officers, directors and stockholders of Texas Electric Railway Company, nor has he shown any fact or circumstance which would excuse him from seeking such redress before filing this suit"; (3) "because the granting of such injunction would cause greater detriment to defendants, if they should ultimately prevail, than the denial of such temporary relief would cause to plaintiff, if plaintiff should ultimately prevail"; (4) "because such application presented no new ground for relief not already passed on in denying his first application"; (5) plaintiff's predecessor in title to the 100 shares of stock "acquiesced in the proposed corporate action and waived his right, if any, to injunctive relief by failure, after due notice, to appear at the annual stockholders' meeting and protest such action or register his dissent therefrom, and plaintiff has no better right"; (6) the trial court properly denied injunctive relief "because plaintiff had full knowledge that the corporate action of which he now complains had already been practically accomplished and was being carried forward with unanimous consent of all stockholders when the 100 shares of stock in question were transferred to his name"; (7) "because the investment by Texas Electric Railway Company of its funds in the promotion of Texas Electric Bus Lines is not ultra vires"; (8) "because the action which plaintiff seeks to restrain is not in violation of the anti-trust laws." Here it may be observed that the trial court appears to have sustained in substance all of the foregoing counter points.

These additional facts are disclosed in aforesaid court findings: That the corporate charter of Texas Electric Railway Company filed and approved by the Secretary of State on December 19, 1935 (Art. 1302, subdv. 68) provided: "The purpose for which it is formed is: To construct, acquire, maintain and operate lines of electric gas or gasoline, denatured alcohol, or naphtha motor railways within and between any cities or towns, and interurban railways within and between cities and towns, in this State, for the transportation of freight or passengers, or both"; and that since such filing of charter and at all times relevant thereto, said railway company operated an electric interurban line between Denison, Dallas and Waco, and intermediate points; that for every year since date of charter, "except temporarily during World War II when curtailment of the use of private automobiles caused an abnormal increase in passenger traffic, the operations of Texas Electric Railway Company have been carried on at a loss, and there is no prospect that the operations of such electric interurban railway can be made to yield a profit in the future"; and that upon application made to the Interstate Commerce Commission by the interurban company for permission to abandon its entire system of railroad, after hearing by a trial commissioner, there was recommendation and order on August 25, 1948, granting the application, with the finding that "The applicant is discontinuing operations because of ever increasing losses which it could not withstand indefinitely."

It was further uncontroverted that on December 13, 1947, Texas Electric Bus Lines was chartered for the statutory purpose, Art. 1302, subdv. 66, of establishment and maintenance of a line of stages. The amount of its corporate stock was $100,000 which was paid for and is beneficially owned by the Texas Electric Railway Company; that thereafter on August 25, 1948, upon application by the new Bus Line to the State Railroad Commission, a certificate of public convenience and necessity was granted to operate passenger busses between Dallas and Waco and intermediate points; the Southwestern Greyhound Lines, Inc., a business competitor, filing exceptions to the grant of such permit; that after due notice the stockholders of the Texas Electric Railway Company met on April 20, 1948, and authorized its Board of Directors to take necessary steps for abandonment of its entire line at the earliest possible date; that in support of the new company's application to operate bus lines, the Execu-

tive Committee of the Electric Railway Company, acting on behalf of the Board of Directors and stockholders, on May 21, 1948, passed a resolution pledging its assets in the amount of $150,000 to be used by its subsidiary bus line in adequately financing operations; the latter company, upon approval of certificate by the Railroad Commission, intending to increase its capital stock to $150,000 in satisfaction of above loan; and, according to Vice President McAuliff, the Texas Electric Railway Company would be disposed to finance further capitalization of the Bus Company up to $400,000 if and when necessary.

Other court findings indicate that the cost of transporting passengers by busses would be substantially cheaper than similar costs over the present electric interurban line between Dallas and Waco; that the proposed operation of Texas Electric Bus Lines would be in direct competition with operations of Southwestern Greyhound Lines, Inc.; and that said Electric Bus Line does not propose to operate under its certificate of convenience unless Texas Electric Railway Company is permitted to abandon and does abandon its operations of transportation of passengers over its electric interurban railway line.

Appellant placed in evidence his certificate showing ownership of the stock; appellees in sworn allegations charging that such certificate was beneficially owned by Southwestern Greyhound Lines, Inc., and was the property of Bates in name only, whose suit was not in good faith or to protect his own investment, but projected by said Greyhound Lines for purpose of hindering and delaying the commencement of said bus line operation as well as to prevent later competition. In this connection the court found that plaintiff below did not testify or make appearance at either of the two hearings; also that W. M. Brown of Fort Worth, who represented Southwestern Greyhound Lines in filing exceptions with the Railroad Commission protesting appellees' certificate of convenience, was present in the court room on the last hearing (August 30) and, with leave of court, presented an argument on behalf of Bates.

■ Counsel for the parties have ably briefed the points raised by the pleading and testimony, but their respective contentions require no detailed consideration on this, an interlocutory hearing. We are not presently concerned with the merits of plaintiff's appeal, our duty extending no further than whether an abuse of the court's discretion is involved in his denial of injunction; or, otherwise stated, whether there is shown in the record reasonable grounds for its refusal.

It is appellant's contention that the corporate transactions heretofore detailed constitute the entry by Texas Electric Railway Company into a business wholly foreign to the object of its creation, accomplished by it through ownership of the stock of a wholly controlled subsidiary; and prohibited by Art. 1348 Vernon's Ann. Civ.Sts. (against lending credit by one corporation to another) and Art. 1349, Vernon's Ann.Civ.Sts., reading: "No corporation, domestic or foreign, doing business in this State, shall employ or use its stock, means, assets or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law; * * *." Also cited in support is the following from Fletcher's Cyclopedia Corporations, Vol. 6, p. 720: "The prevailing doctrine is that a corporation has no power either to subscribe for or purchase shares of stock in another corporation, unless such power is expressly conferred upon it by its charter or other statute, or unless the circumstances are such that the transaction is a necessary or reasonable means of carrying out or accomplishing the objects for which it was created. Moreover, purchases of stocks of other corporations have been held to be contrary to public policy, in addition to being beyond the power of the corporation."

■ The trial court has rejected appellant's contention of ultra vires, obviously concluding the subsidiary bus line to be merely a substitute for rail transportation and but another and reasonable means of carrying out the object for which the parent corporation was formed; in other

words, an operation within its implied powers (see footnote *); and further, that if Southwestern Greyhound Lines be indeed beneficial owner of the stock in question, the grant of restraint would rather tend to the establishment of a monopoly (lessening of competition) in its favor, and that equity would not lend aid and assistance to the accomplishment of such an unlawful purpose.

So viewing the instant situation, the trial court simply made applicable thereto the equitable doctrine of balance of convenience. Where the Chancellor has a reasonable doubt as to relators' ultimate recovery, the temporary injunction should be refused on the proposition of "balance of convenience." Cartwright v. Warren, Tex.Civ.App., 177 S.W. 197; Terry v. Crosswy, Tex.Civ.App., 264 S.W. 718. In Chaison Townsite Co. v. McFaddin, Wiess & Kyle Land Co., 56 Tex.Civ.App. 611, 121 S.W. 716, 721, the court quoted with approval from Joyce on Injunctions, Vol. 1 sec. 25, viz.: "Where the rights of the parties are at all doubtful, the court applied to for an injunction should look at the balance of convenience, and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction. In this connection it is said in a recent case: 'In a doubtful case, where the granting of an injunction would, on the assumption *that the defendant ultimately will prevail,* cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction usually should be denied. But where in a doubtful case the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. *Such a doubt may relate either to the facts or to the law of the case, or to both.'*" (Emphasis ours.)

Finding no abuse of discretion involved in the foregoing refusal of temporary injunction, the order under review is accordingly affirmed.

---

* The doctrine of implied powers was first recognized in City of Indianola v. Gulf, W. T. & P. Ry., 56 Tex. 594, where the Supreme Court quoted from Pierce on Railroads, as follows: "The power of a corporation, in respect to contracts and business dealings, extends not merely to those which are absolutely essential or indispensable to the performance of the specified acts authorized by its charter, but as well to those which, not being prohibited by statute or public policy, are designed and may be useful to promote the main enterprise. *The choice of means which are reasonably promotive of the main purpose is with the corporation;* and where different methods stand this test, judicial tribunals will not revise its discretion by holding that the one chosen was not indispensable, and that another might have been more wisely taken." (Emphasis ours.) And the rule that implied corporate powers include a "choice of means" has been reaffirmed and applied in subsequent cases. Thus, in State v. San Antonio Public Service Co., Tex.Com.App., 69 S.W.2d 38, an electric power and light plant was held to be empowered under its charter to be engaged in the sale of electric appliances; and in Kasch v. Farmers' Gin Co., Tex.Com.App., 3 S.W. 2d 72, 74, it was held that a gin company was authorized to engage in the business of buying and selling pedigreed cotton seed; the court observing: *"What is the usual and customary method of operating a business is essentially a question of fact, for such custom and usage change with time.* * * *"* (Emphasis ours.)