**CITY OF SAN ANTONIO et al.**

v.

**CAMP WARNECKE, Inc., et al.**

No. 10217.

Court of Civil Appeals of Texas.

Austin.

April 14, 1954.

W. L. Matthews, Brewer, Matthews, Nowlin & Macfarlane, San Antonio, for City of San Antonio.

W. S. Gideon and Mac Umstattd, Austin, for Lower Colorado River Authority.

E. M. Cape, San Marcos, for Guadalupe-Blanco River Authority.

Fuchs & Riedel, Schleyer & Bartram, New Braunfels, for appellee.

ARCHER, Chief Justice.

This is an appeal from an order of the District Court granting a temporary injunction restraining the defendants, appellants herein, in part as follows:

"That during the early part of the month of May, 1952, the defendants, by the discharge of heated water into the Comal River, so changed the natural characteristics of said river and its waters as to raise the temperature of said water from its normal temperature of seventy-four (74) degrees Fahrenheit in its natural state, to temperature ranging from eighty (80) to ninety-five (95) degrees Fahrenheit, where the

same passes the plaintiffs' properties; that such heating continued through the months of May, June, July and August of 1952, and was again resumed and continued without intermission through the months of May, June, July and August and September of 1953, and throughout the period of this hearing; that as a result of said heating, the water of the Comal River has emitted and does now emit foul and noxious odors, and has produced, and does now produce, great quantities of scum and other vegetable matter; that it changed the water from a clear and transparent nature to a dirty and opaque nature, and that it created a potential health hazard; that it has had and now has the effect of rendering plaintiffs' bathing beaches insanitary and unclean, and that it caused plaintiffs great inconvenience and substantial injury and damage; that plaintiffs in May, 1952, promptly after such heating first occurred, protested against such heating to the defendants, and to each of them; that plaintiffs again, in May, 1953, protested to each of the defendants against the future heating of the waters of the Comal River where same pass plaintiffs' properties; that since such time the defendants have asserted and do now claim the right to continue discharging heated water into the Comal River; that such claim of right together with the acts and conduct on the part of the defendants constitute probable cause for plaintiffs' allegations in their First Amended Original Petition to the effect that such claims and the acts and conduct of the defendants cast a cloud upon the rights and title to plaintiffs' property and riparian rights.

\* \* \* \* \* \*

"That the defendant, Lower Colorado River Authority, has declared it to be its intention to continue discharging heated water into the Comal River; that both the other defendants have continued to accept the benefits accruing to them as a result of such oper-

ation; that none of the defendants have any plans for the discontinuance of such practices; that they have filed a joint answer and joined in a common defense, asserting and claiming the right to heat the waters of the Comal River without regard to the effect same may have in polluting the Comal River or upon the rights of plaintiffs as lower riparian owners; that the discharge of heated water into the Comal River is an unreasonable use of said waters and results in the pollution thereof, and constitutes a nuisance and should be abated.

"The court has determined and found from the evidence that the acts and conduct of the defendants in discharging heated water into the Comal River in the manner and under the circumstances heretofore determined by the Court, and the threat to continue such acts in the future, is a trespass upon and an unlawful invasion of the property rights of plaintiffs and will result in a continuing injury to plaintiffs, the extent of which cannot be measured, but which, from the evidence, appears to be substantial and irreparable, unless and until plaintiffs are granted the injunctive relief hereinafter provided.

"It is therefore accordingly ordered, adjudged and decreed that the defendant, Lower Colorado River Authority, be and said defendant is hereby prohibited, enjoined and restrained, pending a trial of this cause on its merits, from polluting and altering the physical characteristics of the Comal River by discharging heated water into the same and from doing any act which would prevent the waters of said river from reaching plaintiffs' lands in their natural state and purity.

"\* \* \* it is therefore accordingly ordered, adjudged and decreed by the Court that the enforcement of the order granting the temporary injunction be and the same is hereby suspended until midnight of May 31, 1954, \* \* \*."

This suit was instituted by appellees against appellants seeking an injunction and for a judgment quieting the title to their water rights and privileges and removing cloud cast thereon by the continuous invasions and trespasses of the defendants by discharging heated water into the Comal River.

The appellees allege ownership of certain lands adjacent to the Comal River on which there is located certain buildings and improvements used as living quarters and recreational purposes for a long period of time, and that the water of the Comal River is used as a swimming place for the use of which a fee is charged. Allegation was made of the location of Comal Plant, and in the operation of the plant the water is heated to such an extent that it has a temperature as high as 95 degrees Fahrenheit, instead of the natural and normal temperature of approximately 74 degrees, and thereby have diminished the attractiveness of the Comal River to plaintiffs' customers and the use thereof interfered with. That the heating of the water has greatly increased the growth of plant and organic material, thereby making the water foul, polluted and unhealthy, and large amount of scum to be cast into the water opposite plaintiffs' land and on the land itself, and that such actions have injured and will, if continued, destroy the natural flow of the river and create a health hazard, and constitute a nuisance in fact. That plaintiffs as owners of the land and the riparian rights, and their long prior use, have acquired, own and are entitled to have the water come down to them, to their land and into and through their swimming pools and past their bathing beaches in its natural condition, etc.

Appellants as defendants answered in part that the operation of the Comal Plant in no manner pollutes the waters of the Comal River, and plaintiffs are guilty of pollution of the river themselves as well as other conditions such as street sewers, out of door privies, cesspools over which defendants have no control and are not responsible for. That plaintiffs in the operation of their Camp do not comply with the minimum standards of the law pertaining to health and sanitation, etc. and therefore do not come into court with clean hands.

Further answer was made that the operation of the Comal Plant enabled all users of electricity to receive same, and the plant was operated in the same manner as it had been for the last twenty-five years, and that such right was recognized by the plaintiffs; that the severe drouth was responsible for the drastic reduction of water coming down the Comal River; that the use of the waters at the Comal Plant in no manner pollutes the river, and that there is located private and public parks upstream from the plant, and are used by great numbers of persons as swimming, boating, picnic, and other purposes, as well as factories located upstream. Allegation was made of ownership of the property on which Comal Springs are located, and that the use to which defendants are making of the water is reasonable and does not interfere with the riparian rights of plaintiffs, etc.

Appellants have assigned twelve points as error in the granting of the temporary injunction and are to the effect that since the plant has been operated and is being operated in the same manner for the past twenty-five years without objection that such right has been gained by prescription, and that defendants have expended large sums of money with respect to the plant out of public funds, without objection by plaintiffs, they are barred by the statutes of limitation, and are estopped at this time. That since the use of the waters of Comal River are reasonable and essential to the health and welfare of the people of New Braunfels, as well as others, plaintiffs as lower riparian claimants cannot complain of such use; that the use to which defendants are making of a portion of the water is superior to that to which appellees use; that plaintiffs do not have a property right in the public waters flowing past their lands, other than the right to use same by the riparian owner himself and do not have a property right to charge for swimming privileges and do not have a cause of action against defendants; that the only use plaintiffs desired to make of the waters was for profit; that the

cessation of the operation of the Comal Power Plant would constitute a public calamity; that the damage to plaintiffs, if any, by the continued operation of the plant would be inconsequential. That if a nuisance was proven, which appellants deny, the right of plaintiffs to abate it is barred because of laches; that the granting of the temporary injunction changed the status quo which had existed for twenty-five years; that appellees did not come into court with clean hands; that since plaintiffs sought to allege and prove the pollution of a public stream the Texas State Department of Health was a necessary party.

The trial court after a hearing granted a temporary injunction, finding "that the acts and conduct of the defendants in discharging heated water into the Comal River in the manner and under the circumstances, heretofore determined by the court, and the threat to continue such acts in the future is a trespass upon and unlawful invasion of the property rights of plaintiffs and will result in a continuing injury to plaintiffs."

The appellants (defendants below) contend that there has been no change in the method of operating the plant for the past twenty-five years and none is contemplated.

The Comal Power Plant is a steam electric generating plant with 60,000 kilowatts capacity and furnishes power to a large number of cities. In the operation of the plant waters from Comal Springs feeding the lake are taken from the lake through an artificial canal down to the plant and used to condense steam, through which process a portion of the heat in the stream is transferred to the cool waters and then taken underground through an enclosed tunnel and discharged into Comal Creek and taken down the creek into the river and past the land owned by appellees into the Guadalupe River.

Since this is an appeal from an order granting a temporary injunction we will not try to decide all issues of law or of fact other than the evidence or lack of evidence to justify the granting of the temporary injunction in an effort to determine if the trial court abused its discretion in entering the order complained of.

The order under attack, if sustained, would dispose of the litigation in its entirety since the use by appellants of the water in the manner and purposes by the appellants is claimed to be essential to the continued operation of the plant, and to change the method of operation, and none is contemplated, would cost initially over $1,000,000.

The President of Camp Warnecke, Inc., testified that many people came during the summer of 1953 and that he never told anyone that the water was unhealthy and not a good place to swim, or that the water was polluted, but charged for the privilege of swimming and held the place out as a nice place to swim. The witness testified that he did not know from whence the waste and filth came and made no investigation, and that Camp Warnecke built a trap to catch the scum, that no relief was had from the authorities, that he had not asked the City of New Braunfels to quit cutting weeds in the lake. The witness testified that a trap was built near the plant to catch the weeds and remove them, and that the power company in doing this was helping to keep pollution out of the river.

Mr. Jahn, a Civil Engineer of long residence in New Braunfels, testified that by an arrangement the operators of Comal Plant in conjunction with the city from time to time the weeds were cut and removed; that the city cut the weeds in Landa Park and let them flow down to the Power Plant and by arrangement the plant employees would take the weeds out of the river. The witness testified that the branch into the river had little water in it and had weeds too, that weeds cut along Landa Park Estates were cut and permitted to flow down the river and that the old river channel has a growth in it and scum; that he had not noticed any odors different from that at Landa Park and at Camp Warnecke.

Dr. Sullivan, City Health Officer, testified that he had not noticed any odors from decayed plant life, that sometimes the odors

get pretty bad on Landa Park Island but he had not noticed it. The witnesses testified that there was no indication that there is any serious contamination in the stream; that there was an acute problem in a populated area of drainage into Comal Creek because of an inadequate commode problem; that the city was trying to correct these problems; that he noticed some malodors on Comal Creek that he thought came from decaying plant life but that such condition did not constitute any menace to the city health. The witness testified concerning a sewer lift which is inadequately located near Camp Warnecke and of some other sewer troubles, but that he did not worry about the bacteria count in the Comal River at the present time.

The operator of Camp Giesecke testified that the water of the river was very hot and murky and that guests started complaining last summer about the heated water and that the business had fallen off. The witness testified that the camp was completely overflowed in September, 1952.

There was testimony concerning the temperature of the water, but in no instance did the management of either of the camps warn swimmers against going into the river and the fact that only a relative few of the several thousands of swimmers ever complained about the heat of the waters.

Testimony was had that on account of the dry season the flow of the river was substantially reduced during 1952 and 1953.

Evidence was given that an expenditure of over $1,000,000 would be required to install a cooling system, and would take at least eighteen months time to make such change and that such an outlay of money would not be economical.

Witnesses for appellant testified as to the operation of the plant in the same manner for more than twenty-five years and stated in some detail the methods of using the water for cooling purposes by a gravity flow of the river water through the plant into a big condenser with tubes full of steam, and resulted in heating the waters at the point of discharge, that the water came in at a natural temperature and is discharged in a hotter condition and flows into Comal Creek and into the river.

The operation of the Comal Plant is lawful and not a nuisance per se, but it may become a nuisance in fact when its operation is conducted in such a manner as to seriously interfere with the enjoyment of life and property, and in determining whether a business is a nuisance, its location, usefulness or necessity to the welfare and prosperity of the country are all important.

In Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615, affirming the Court of Civil Appeals in 223 S.W.2d 81, the Supreme Court held that an abatement of a lawful place of business was a harsh remedy. The Court further held that there should be a balancing of equities in order to determine if an injunction should be granted.

Since the effect of the order complained of is to determine the riparian property rights of the parties, such order would prohibit the further exercise of such property rights, and does more than preserve the status of the property as it had theretofore existed, and consequently accomplishes the whole object of the suit, and it was improper for the court to grant same. The court is without authority to divest a party of property rights without a trial. Perry v. Stringfellow, 134 Tex. 328, 134 S.W.2d 1031; Chandler v. City of Olney, 126 Tex. 230, 87 S.W.2d 250; 28 American Jurisprudence, p. 212.

Many cases may be cited relative to the granting of temporary injunction to maintain the status quo, prevent irreparable injury because there is no adequate remedy at law, or that the defendants are unable to refund in damages, but we do not do so, since this case is to be reversed.

The judgment of the trial court is reversed and the temporary injunction dissolved.

Reversed and temporary injunction dissolved.