Noble Brasfield DANIEL et al., Appellants,

v.

Andrew George GOESL, Appellee.

No. 7207.

Court of Civil Appeals of Texas.

Texarkana.

June 7, 1960.

Rehearing Denied June 16, 1960.

Raffaelli & Keeney, Texarkana, for appellants.

Atchley, Russell & Hutchinson, Texarkana, for appellee.

FANNING, Justice.

The parties to this action, all of whom are medical doctors, were formerly partners with offices in Texarkana, Bowie County, Texas. Appellee withdrew and retired from the partnership on August 11, 1958. On August 17, 1959, appellee opened an office in Texarkana, Miller County, Arkansas, and resumed the practice of medicine in Miller County, Arkansas. Appellants brought an action to enjoin appellee from the practice of medicine in Bowie County, Texas, and Miller County, Arkansas, alleging that appellee had violated a restrictive covenant of the written partnership agreement providing that any retiring partner should not for a period of three years, after retiring from the partnership, practice medicine in either Bowie County, Texas, or Miller County, Arkansas.

Appellants by verified pleadings pleaded the contract in question, and among other things also pleaded that appellee by accepting retirement benefits provided in the contract and paid to appellee by appellants, which payment was to the financial disadvantage of appellants, that thereby appellee was estopped to attack the restrictive covenant in question. Appellants further pleaded that Dr. Goesl's return to medical practice damaged them financially and would do so in the future. By paragraph 18 appellants further pleaded as follows: "Plaintiffs allege that the defendant is now doing and will continue to do, unless he is restrained from doing so, irreparable injury to the plaintiffs, and that the plaintiffs as a result of defendant's actions will suffer financial damages for which there is no adequate remedy at law." Appellants prayed for a temporary injunction against Dr. Goesl pending a trial on the merits.

Appellee by verified pleadings, among other things pleaded that appellants by their specifically enumerated actions and conduct toward appellee created irreconcilable differences and personal ill-will between the partners, that there were violent disputes and dissensions between the partners, occurring before August 10, 1958, and were of such a nature as to make unprofitable the operation of the clinic and constituted a detriment and injury to the clinic and the patients of the clinic. Appellee also alleged estoppel and counter-estoppel against appellants to assert estoppel against appellee Goesl under Section 21 of the contract because appellants had first violated and breached paragraphs 13, 5, 14, and 9 of the contract in question, setting out in detail in their pleadings how appellants had allegedly first breached the contract. Appellee also pleaded other and additional grounds in detail as to why appellants were estopped to insist upon appellee being forced to comply with section 21, the restrictive covenant. In effect appellee pleaded various grounds of estoppel and counter-estoppel against appellants, as well as other grounds why equitable relief should not be granted to appellants. Appellee also filed a cross-action against appellants, seeking $18,000 as monetary damages for slander and for loss of earnings. Appellee in his cross-action also sought a temporary injunction to restrain appellants from the practice of medicine in Bowie and Miller Counties.

The trial court held an interlocutory hearing on the temporary injunction feature of the case. After considering the verified pleadings of the parties and after hearing the extensive evidence adduced the trial court refused to grant any temporary injunction sought by any of the parties. Appellants have appealed from the interlocutory order of the trial court refusing to grant the temporary injunction sought by them against appellee Dr. Goesl.

Appellants have filed an excellent brief and present twelve points of error. It is

our view however that portions of appellants' brief are directed to matters which would be more directly concerned if this were an appeal from the case on the merits and not an appeal from an interlocutory order refusing a temporary injunction. In this connection see Bates v. Texas Electric Ry. Co., Tex.Civ.App., 220 S.W.2d 707, 710, wherein it was stated: "Counsel for the parties have ably briefed the points raised by the pleading and testimony, but their respective contentions require no detailed consideration on this, an interlocutory hearing. We are not presently concerned with the merits of plaintiff's appeal, our duty extending no further than whether an abuse of the court's discretion is involved in his denial of injunction."

■ The scope of appellate review of an interlocutory order of a trial court in refusing a temporary injunction is restricted to the propriety of the order and the review on appeal does not extend to the merits of the main case. 24A, Tex.Jur., pages 376–7, Sec. 262, Injunctions.

The applicable rules with respect to the proper scope of appellate review of interlocutory orders with respect to temporary injunctions are well stated in 24A, Tex.Jur., pages 382 to 389, inc., as follows:

"Discretion and Its Abuse—In cases of appeals from interlocutory orders granting or refusing a writ or dissolving or refusing to dissolve one, the sole question is whether the trial court abused its discretion in entering the order appealed from. The rule is inapplicable, however, where by application of the law to undisputed and uncontradicted facts the right, or lack of right, to temporary relief is readily apparent. The trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts. Many cases enunciate the rule that the grant or refusal of an injunction or a dissolution or refusal to dissolve will be reversed only when a clear abuse of discretion is shown; and if

*the order was based on conflicting evidence or diverse inferences it will not be disturbed. The evidence is not reviewed for sufficiency as it would be upon appeal from a final judgment, but only to see if it supports the court's exercise of discretion.* Generally speaking, if the petition states no cause of action or fails to show any valid reason why the doing of the act complained of should be enjoined, or, if it does state a cause of action but no evidence is presented at the hearing to sustain it, then it is an abuse of discretion to grant a temporary injunction; but, on the other hand, if the petition states a cause of action and the evidence at the hearing sustains it, then there is no abuse of discretion in granting the writ. *While the discretion of the trial judge may be reviewed, discretion may not be exercised by the appellate court.*" (Emphasis added.)

■ Also an appellate court in reviewing an interlocutory order of a trial judge in refusing a temporary injunction must give effect to such evidence as was undisputed and not subject to any qualification or variance as the possible result of the trial judge's exercise of his power to determine its weight and to determine the credibility of the witnesses and of all disputed evidence only that most favorable to the appellee is required to be considered and all reasonable inferences which may be drawn from such evidence an appellate court is required to adopt only those, if any, favorable to the appellee. City of Baytown v. General Telephone Company of the Southwest, Tex.Civ.App., 256 S.W.2d 187, wr. ref., n. r. e.

The rules with respect to the proper scope of appellate review of temporary injunction matters are also well laid down in an able opinion of Chief Justice Hickman of the Texas Supreme Court in the case of Texas Foundries, Inc., v. International Moulders & Foundry Workers Union et al., 151 Tex. 239, 248 S.W.2d 460, 462. In said opinion it was stated:

"In considering whether the Court of Civil Appeals was correct in its decision that the temporary injunction issued by the trial court against all picketing pending a trial of the case on its merits should be modified, we are guided by well-established rules. *The granting or refusing of a temporary injunction is subject to a very different character of appellate review from the granting or refusing of a permanent injunction. The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exercised its order should not be overturned unless the record discloses a clear abuse of discretion.* * * * (citing numerous authorities.)

"The Court of Civil Appeals held that the acts of respondents and those acting with them, above outlined, were unlawful, but concluded that 'we do not believe that it reasonably follows that even though all such unlawful acts of conduct be enjoined, that a peaceful picketing of the entrances of the appellee's plant, in such a manner as is guaranteed by law to strikers in a bona fide labor dispute, would result in future violence.' *The court does not hold that there was a clear abuse of discretion by the trial judge. What it holds is that in its judgment there will be no future violence if picketing is carried on under the modified injunction. It fell into the error of substituting its judgment for that of the trial judge. Such a substitution does not accord with the approved method of review of a temporary injunction. The appellate court cannot substitute its discretion for that of the trial court. It has no independent discretion in reviewing such an order; its sole function is to determine whether there has been a clear abuse of discretion by the trial judge. While the trial judge in this* case may have erred in his judgment as to what would be the result of future picketing, it cannot be said that this record discloses an abuse of discretion by him. We held in Railroad Commission vs. Shell Oil Company, supra, that even though the district court erred in its conclusion on the applicable substantive law, it did not follow that that court abused its discretion in granting a temporary injunction to preserve the rights of the parties pending trial on the merits.*

"We observe here, as we did in connection with our ruling on the motion to dismiss, that respondents, as a practical matter, are not prejudiced by this ruling. The only effect of this opinion is to fix the costs of appeal. This being an interlocutory proceeding, our holding will be ignored if and when this case is tried on its merits. *Counsel have ably briefed important questions of labor law, but we cannot decide them finally in this proceeding. If questions of that character are to be decided by the appellate courts, the parties should first try their cases on the merits and appeal from the order of the trial court granting or refusing a permanent injunction.* * * * It is error for a trial court to grant a temporary injunction, the effect of which would be to accomplish the object of the suit. To do so would be to determine rights without a trial. James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959; Perry v. Stringfellow, 134 Tex. 328, 134 S.W.2d 1031; McMurrey Refining Co. v. State, Tex.Civ.App., 149 S.W.2d 276, error refused. *There is no claim that the trial court in this case would not have afforded respondents a prompt hearing on the merits.*

"The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed." (Emphasis added.)

There is a pertinent statement by Justice Norvell with respect to discretionary

authority in the case of Jones v. Strayhorn, Tex., 321 S.W.2d 290, 295, as follows: " * * * The mere fact or circumstance that a trial judge may decide a matter within his discretionary authority in a manner different from what an appellate judge would decide if placed in a similar circumstance does not demonstrate that an abuse of discretion has occurred. When it is once decided that a trial judge exercising a 'discretionary' authority has but one course to follow and one way to decide then the discretionary power is effectually destroyed and the rule which purports to grant such power is effectively repealed. * * *"

It is appellants' prime position in their brief that the appellants were entitled to a temporary injunction as a matter of right under the facts, which appellants contend were undisputed. Various facets of appellants' prime position that they were entitled to a temporary injunction as a matter of right under the record are set out in their brief.

Appellee's prime position in his brief is set out in his first counterpoint, reading as follows: "The trial court did not abuse its discretion in denying Appellants' application for temporary injunction."

Appellants called the appellee to the witness stand under the adverse party rule on at least three different occasions and brought out evidence from Dr. Goesl with respect to the applicability of the restrictive covenant (Sec. 21) to senior partners such as Dr. Goesl. In this connection as shown on pages 19, 51, and 524–5 of the statement of facts appellants' counsel asked questions and received answers from Dr. Goesl, with respect to this matter, and the following portions of such record are hereinafter quoted:

"Q. Yes, sir. Now I believe that I discussed with you, and you discussed among yourselves the possibility of making the restriction applicable only to future additions to the clinic, did we not? A. *Well, actually that is the way I understood the contract to be applied. I was under the impression—I was told that the restrictive covenant was not to apply to the senior partners, but was to apply to any new member that came in.*" (Emphasis added.) (S. F. p. 19.)

"Q. And at the time you and Mrs. Goesl, and the other members of the partnership and their wives, signed it, you were signing with the understanding that it was an enforceable contract, were you not? A. *Enforceable as far as new partners are concerned, not the senior members.*" (Emphasis added.) (S.F. p. 51.)

"By Mr. Raffaelli: Q. Doctor Goesl, I want to be sure I understood your testimony with reference to this restrictive covenant.

"Mr. Russell: If the court please— well, go ahead and ask it.

"Q. Did you state that when you signed the covenant, that you did not think it applied to you, as a senior partner?

"Mr. Russell: If the court please, I am going to object to this as being repetitious. I think Mr. Raffelli can refresh his memory and refer to the record on it.

"Q. Well * * *.

"Mr. Russell: This is the third time he has called this man as an adverse witness. The way we are going now, we will never get through.

"Mr. Raffaelli: I want to know this in particular.

"Mr. Russell: He has asked him that before. I say that it is repetitious.

"The Court: It is repetition. There is no question about that.

"Mr. Russell: I object to it.

"The Court: The answer is already in the record on that. I * * *

"Mr. Raffaelli: Well, now, if Mr. Russell will tell me what his answer is on that, I * * *

"The Court: The court can tell you what it is.

"Mr. Raffaelli: What is his answer to that question?

"The Court: You state your question.

"Mr. Raffaelli: Did he think, at the time he signed the partnership agreement, August 11, 1953, that the restrictive covenant applied to him as a senior partner?

"The Court: Did he think it did apply to him?

"Mr. Raffaelli: Yes, sir.

"The Court: His testimony was that he was led to believe that it did not apply.

"Mr. Raffaelli: May I ask Doctor Goesl if that is true? A. That is correct." (Emphasis added.) (S.F. 524–5.)

Appellants made no character of objection to the above and foregoing testimony, but brought it out themselves when they placed Dr. Goesl on the witness stand under the adverse party rule.

We quote from some of the contentions made by appellee in his brief under his first counter-point as follows:

"The testimony taken at the hearing on the application for the temporary injunction is replete with instances indicating that serious dissension had arisen among the members of the partnership as early as the summer of 1956 (e. g. S.F. Pages 24, 35, 36, 38, 46, 47, and 218). A disinterested witness, Mr. L. E. Roberts, in fact, testified that he was willing to accept an offer for the building occupied by the clinic which was $76,000 less than an offer which he had previously received in order that the dissension might be alleviated. Further evidence of dissension among the members of the partnership is indicated by the testimony that at meetings of the partners, there were frequent splits in voting with the Appellants voting on one side and the Appellee and Drs. Wilhelm and Dawson aligning themselves on the other. The dissension culminated in a motion by the Appellee to dissolve the partnership in the summer of 1958, on which motion three of the members voted for dissolution and three voted against a dissolution (S.F. Pages 218 and 29).

"The dissension seems to have originally arisen over the question of rent on the building occupied by the clinic (S.F. P. 59). This building was owned by Appellant Drs. Daniel and Harrell and by Mr. L. E. Roberts (S.F. Page 242). One of the Appellants testified that he had reported to the Appellee that they, as owners of the building, were not interested in profit but would merely assess a rental charge sufficient to cover expenses of the operation of the building, (S.F. Page 224). A disinterested witness, Mr. Marshall Greer, the accountant for the clinic, testified that it is his recollection that at the formation of the partnership, the rental paid by the clinic was $300 per month (S.F. Page 421), and that the rental charge was increased on several occasions until in the summer of 1956 it was increased to $700 per month (S.F. Page 422), and that the yield of $700 per month was such as would yield a profit to the owners of the building (S.F. Page 429). There is also some indication that at one occasion there was a threat to increase the rent to $1,000 per month (S.F. Page 427). One of the Appellants testified that after the withdrawal of the Appellee, the rent was reduced to $500 per month (S.F. Page 243).

"There is considerable testimony to the effect that after the formation of the partnership, Appellant Dr. Daniel did not devote his full time to his medical practice at the clinic (e. g. S.F. Pages 390 and 489) and that Dr. Daniel was bringing into the partnership less income than any other member (S.F. Page 556).

\* \* \* \* \* \*

"The Appellee submits that in addition to the conflict in evidence with regard to the applicability of the restrictive covenant to the Appellee, there is further evidence which would be sufficient to uphold a finding that the Appellants were the first to breach the partnership agreement. In this connection, there is considerable evidence that Appellant Dr. Daniel did not devote his full time to partnership matters. Appellee submits that this conduct constituted a breach of the partnership agreement. Furthermore, there is testimony to the effect that Appellant Drs. Daniel and Harrell, who were co-owners of the building in which the clinic is situated along with Mr. L. E. Roberts, consistently and arbitrarily raised the rent on the building to the detriment of the partnership after there had been a tacit agreement that they would charge only such rent as was necessary to cover the expenses of maintenance of the building. Appellee submits that this action by Appellant Drs. Daniel and Harrell violated their duty to their fellow partners and constituted a breach of the partnership agreement.

"Evidence of prolonged dissension among the partners as indicated in a three-to-three split in the vote on numerous matters including a motion to dissolve the partnership created an issue of fact as to whether or not, in fact, the Appellants themselves had breached the partnership agreement.

"The Appellee submits that the trial court ruling should not be disturbed because (1) the evidence taken in a light most favorable to the Appellee clearly creates an issue of fact as to the applicability of the restrictive covenant to the Appellee (2) the evidence raises an issue of fact as to whether the partnership agreement was initially breached by the Applicants and (3) the trial court did not abuse its discretion in denying the application for temporary injunction because its ruling was based on a conflict in the evidence."

 The statement of facts in this case contains 570 pages. The writer of this opinion will not attempt to review the evidence in detail but has carefully considered same, and has carefully reviewed the entire record in the case in the light of the scope of appellate review as laid down by the Supreme Court of Texas in the case of Texas Foundries, Inc. v. International Moulders & Foundry Workers Union, supra, 248 S.W.2d 460. As the writer of this opinion understands that decision, and other authorities of similar nature hereinbefore cited, if the order of the trial court refusing the temporary injunction was based on conflicting evidence or diverse inferences on material matters the order of the trial court will not be disturbed, and that the evidence is not reviewed for sufficiency as it would be upon appeal from a final judgment on the merits, but only to see if it supports the trial court's exercise of its judicial discretion, and furthermore while the judicial discretion of the trial court may be reviewed by this court to determine whether a clear abuse has occurred, we are however not at liberty to substitute our discretion for that of the trial court.

The record reflects that all of the litigant doctors are all well qualified medical men of high professional and moral standing in their home communities. The record reflects that serious dissension, conflicts, and disputes arose between the partners in the medical clinic with respect to the increasing of the rent on the building occupied by the partners which was owned

by appellant doctors and a druggist, and with respect to the restrictive covenant as being applicable to Dr. Goesl and other senior partners, and there were disputes as to whether appellants had first breached other portions of the contract, and there were other disputes, grievances, and contentions among the partners as shown by the record.

Appellee's second counterpoint reads as follows: "Appellants are not entitled to injunctive relief because they have not shown that the restrictive covenant was both reasonable and necessary to protect their medical practice." Appellee cites authorities in support of its second counterpoint and among other things contends thereunder that there was a disputed issue as to whether appellant doctors were irreparably injured by Dr. Goesl's return to medical practice for which appellants had no adequate remedy at law. While appellants alleged irreparable injury and no adequate remedy at law they were also cast with the burden of proof upon these issues as stated in 24–A Tex.Jur., p. 274, as follows: "Since injunction is a severe remedy, a clear right thereto must be alleged and proved." Also in 24–A, Tex.Jur., p. 279, 280, and 281 it is stated in part as follows:

"It is necessary that the applicant show that he is entitled to injunction according to the principles of equity, and that the relief to which he is entitled 'requires' an injunction.

"Along with other things, the petition should allege a threat and imminent probability of injury remediable only by injunction, a substantial right or equity in petitioner, and such irreparable injury, lack of legal remedy, multiplicity or vexation, threatened clouds, diligence and the doing of equity as make a case for injunction. * * *

"Specific facts should be alleged in the petition, which should show the probability of an irreparable injury."

This court in deciding this case must keep in mind that the trial judge that tried this case was the judge of the credibility of the witnesses in the case and of the weight to be given their testimony. This under our system of jurisprudence was clearly within the province of the trial judge and of all disputed evidence and reasonable inferences which may be drawn from such evidence, an appellate court is required to adopt only those, if any, favorable to the appellee.

Also there is no claim in the record made by appellants that the trial court would not have afforded them a prompt hearing on the merits of the case.

Viewing the evidence in its most favorable light in favor of appellee as we must, it is thought by the writer of this opinion that there were such disputed material fact issues, conflicts in evidence and diverse inferences with respect to material factual matters raised by the evidence, for the trial court to exercise its judicial discretion in passing upon the issue as to whether it should grant or refuse a temporary injunction pending a trial on the merits of the case.

It is the further thought by the writer of this opinion that there was also proper basis in the evidence on the hearing for temporary injunction for the trial court to exercise its judicial discretion in passing upon the issues as to whether appellant doctors were or were not irreparably injured by Dr. Goesl's return to medical practice, and whether appellants, if damaged, had an adequate remedy at law.

It is the considered judgment of the writer of this opinion after a careful review of the record, that this court can not properly say from the record in this case that the trial court clearly abused its judicial discretion in refusing the temporary injunction sought by appellants. To do so, the writer thinks would be to substitute the discretion of this court for that of the trial court which we are not at liberty to do.

The writer of this opinion passes only upon what the writer deems necessary for this court to pass upon here, to-wit, the interlocutory appeal from the order refusing the temporary injunction. The writer has not entered into a more extensive discussion of the evidence as the case may later reach this court upon the merits for a full appellate review.

The judgment of the trial court is affirmed.

DAVIS, J., took no part in the consideration or decision of this case.

CHADICK, Chief Justice (concurring).

Judge FANNING'S opinion probably states the facts sufficiently, but it will add some clarity to enlarge upon them to a small extent. The written partnership agreement provided for the contingency of a doctor withdrawing and the clinic continuing with such other partners as remained, as well as provision for a dissolution of the partnership. Certain rights accrued to a party withdrawing that did not accrue under the terms of the dissolution agreement and would not accrue if the partnership was dissolved by law. Three of the partners, including Dr. Andrew G. Goesl, elected to withdraw and claim the benefits of the withdrawal provisions rather than force a dissolution by the terms of the agreement, or under such rights to a dissolution as they might have had under the law. The withdrawing partners were paid in excess of $20,000 each by the remaining partners over a period of twelve months from the date of their withdrawal. Dr. Goesl observed the restrictive covenant against practicing medicine in Bowie County, Texas and Miller County, Arkansas for the twelve month period during which he was receiving monthly installments of the benefits accruing under the withdrawal provision.

After receiving the last payment he repudiated the contract and began practicing medicine contrary to the restrictive covenant, but limited his activities in that respect to Miller County, Arkansas.

The record in this court was regularly assigned to Judge Fanning, and he has written an opinion recommending an affirmance of the trial court. Judge Davis refuses to participate. If I do not consent to an affirmance the case will have to await a transfer to another Court of Civil Appeals, or such time that a full court here can review it. I have no experience to shed light upon one contingency, but my experience with transfers from one Court of Civil Appeals to another is that a delay of approximately twelve months would result. I feel sure a solution other than by transfer would not produce a decision sooner.

The restrictive covenant involved dates from August 11, 1958. Decision in the case must be made forthwith or the injunctive relief sought will become moot and the appellants will be denied appellate review of their case through procedural delay.

The choice, as the case is presented to me, is to agree to an affirmance or be party to denying the appellants their day in the appellate court. The course I follow appears to be the lesser evil. If the trial judge was without authority to deny the application for a temporary injunction recourse by writ of error may be had to the Supreme Court. If otherwise, a correct judgment has been entered.

The unusual circumstances just referred to have caused me to accede to an affirmance with scant study of the record and the authorities presented by the briefs of parties. However, it seems proper that I should suggest the reasons why I entertain great doubt as to the correctness of the judgment under review.

The briefs of the appellees and Judge FANNING'S opinion assert that there are four areas of disputed law or fact in which the trial court was called upon to make a decision. They are: 1). Breach of the clinic partnership contract by appellants

 

prior to any claimed breach by the appellee; 2). An understanding among the clinic partnership that the covenant not to practice in Bowie and Miller Counties within three years after withdrawal was not intended to apply to Dr. Goesl; 3). Conflicts in evidence respecting irreparable injury; and 4). Restrictive covenants of the nature of this under consideration are not enforceable except upon showing of reasonableness, etc.

Oral arguments prior to submission and the briefs lead me to believe that Dr. Goesl is estopped to assert a prior breach of the partnership agreement by the appellants. It seems undisputed that after the several things occurred which Dr. Goesl contends constituted a breach of the partnership agreement by the appellants, that Dr. Goesl reaffirmed the contract by claiming and accepting payments in excess of $20,000 under the contract's withdrawal provision. To allow him on one hand to invoke the terms of the withdrawal provision and accept a substantial sum of money, and then after receipt of payment to disaffirm the contract in its entirety and assert that by reason of the appellants' prior breach no binding contract existed at the time of withdrawal, does not comport with my understanding of equitable action.

The second area mentioned is an attempt to vary the terms of an unambiguous written agreement by parol testimony. The evidence introduced has no probative force and raises no issue of fact for determination by the trial court.

Since I have not exhaustively studied the record of the case and authorities cited I can not say that within the areas of 3 and 4 above no issue of fact for determination by the trial judge exists, nor that the legal questions presented have been erroneously decided. From Judge FANNING'S opinion I gathered that he senses that there might be other reasons than these I mention, either of law or fact, which might sustain the trial court's judgment if an exhaustive search of the record is made, but nei-

ther he nor counsel for the appellee have suggested what other facts might be found or theories of law supported. I have not attempted a comprehensive exposition of the questionable nature of the opinion, and limit these remarks to brief reasons for questioning its propriety.

I think the authorities may be summed up, with respect to the scope of appellate review of an appeal in a temporary injunction case, as holding that review is limited to the authority of the trial judge to make the order entered, and not to review its justness. If there are questions of fact which the trial court must determine to reach a conclusion, the appellate courts must not disturb the trial court's judgment; but the trial judge can not in the exercise of discretion ignore either law or facts, and no privilege is lodged in him to misapply the law to the conceded facts. For the reasons and on the basis stated I concur in affirming the judgment.