TEXAS FOUNDARIES, INCORPORATED, V.
INTERNATIONAL MOLDERS AND FOUN-
DRY WORKERS UNION ET AL.

No. A-3304. Decided April 9, 1952.
Rehearing overruled May 21, 1952.
(248 S. W., 2d Series, 460.)

*Rawlings, Sayers, Scurlock & Daly,* of Fort Worth, *Collins Garrison, Renfro & Zeleskey, Pitser H. Garrison, Peavy & Shands* and *James W. Peavy,* all of Lufkin, *Looney, Clark & Moorhead, Everett L. Looney* and *R. Dean Moorhead,* all of Austin, for petitioner.

The Court of Civil Appeals erred in refusing to apply the rules which are applicable to an appeal from a temporary injunction. International Ass'n. v. Sharp, 202 S.W. 2d 506; 24 Texas Jur. 183 and 313.

*Mullinax, Wells & Ball* and *L.N.D. Wells, Jr.,* all of Dallas, for respondents.

The Supreme Court is without jurisdiction since no error of substantive law is shown and the Court of Civil Appeals committed no error in modifying the temporary injunction. R.S. Art. 1728, sec. 6; Ex parte Henry, 147 Texas 315, 215 S. W. 2d 588; Cafeteria Employees v. Angelos, 320 U.S. 293, 64 Sup. Ct. 126.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In a suit by petitioner, Texas Foundries, Inc., for damages and for a permanent injunction against picketing, and, pending the trial of the case on its merits, for a temporary injunction, the trial court issued a temporary injunction against the respondent labor union and thirty-eight individual members thereof, enjoining them from all picketing until the case could be heard on its merits. The Court of Civil Appeals modified the injunction so as to free respondents from some of its restraints and to permit further picketing. 241 S. W. 2d 213.

All that is before us is a temporary injunction. Questions of

law which go to a decision of the case on its merits on final hearing will not be discussed. In our view the case may be determined from a consideration of but two questions. First. Should the writ of error be dismissed as moot? Second. If not, does the record disclose a clear issue of discretion by the trial judge in granting the temporary injunction?

Respondents make known to the court that they are not now engaged in picketing petitioner's plant; that on or prior to September 4, 1951, they terminated their strike and picketing activities and have not picketed since that date; that several of them have been re-employed and are now working for petitioner, and all other individual respondents who were on strike have made application to petitioners for reinstatement; that the striking and picketing have been voluntarily abandoned; and that no further picketing is threatened. Wherefore, they pray that the application for writ of error be dismissed as moot.

1 The motion is not to dismiss the whole proceeding for a temporary injunction nor even to dismiss the appeal which respondents themselves prosecuted from the trial court's judgment, but is to dismiss the writ of error. To grant the motion would leave in effect the judgment of the Court of Civil Appeals in which respondents obtained relief and would deny to petitioner the right to have that judgment reviewed. The rule has long been established in this court that when a case becomes moot on appeal, all previous orders are set aside by the appellate court and the case is dismissed. To dismiss the appeal only would have the effect of affirming the judgment of the lower court without considering any assignments of error thereto. McWhorter v. Northcutt, 94 Texas 86, 58 S. W. 720; Danciger Oil & Refining Co. v. Railroad Commission, 122 Texas 243, 56 S. W. 2d 1075; Freeman v. Burrows, 141 Texas 318, 171 S. W. 2d 863.

2 When the appeal is from an order granting a temporary in-injunction, and that phase of the case becomes moot on appeal, the same rule applies. The proper order is to set aside all orders pertaining to the temporary injunction and dismiss that portion of the case, leaving the main case still pending. International Assn. of Machinists Local Union No. 1488 v. Federated Assn. of Accessory Workers, 133 Texas 624, 130 S. W. 2d 282; Service Finance Corp. v. Grote, 133 Texas 606, 131 S. W. 2d 93; West v. Culpepper, 135 Texas 156, 140 S. W. 2d 166.

**3** The converse of the above rule is true. If the record would not warrant us in setting aside the orders of both courts below, then the case is not moot. Obviously, under this record, we would not be authorized to enter that order and respondents do not suggest that we could or should do so. The motion is to dismiss the writ of error only. That motion is overruled.

We do not base our order overruling the motion in any degree upon the fear that respondents are acting in bad faith. We accept their statement that the strike has been settled and further picketing is not threatened. That being the situation, it is clear that, except in the matter of court costs, no practical benefit would flow to respondents by our leaving undisturbed the judgment of the Court of Civil Appeals granting them the right to picket. And for the same reason they would not be materially prejudiced by an affirmance of the trial court's judgment. Neither judgment would be res judicata on the trial of the case on its merits. Very different questions will be up for decision when and if the court comes to decide what character of permanent injunction, if any, should be issued. On that hearing what has been done in this proceeding will be ignored.

**4** In considering whether the Court of Civil Appeals was correct in its decision that the temporary injunction issued by the trial court against all picketing pending a trial of the case on its merits should be modified, we are guided by well-established rules. The granting or refusing of a temporary injunction is subject to a very different character of appellate review from the granting or refusing of a permanent injunction. The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exercised its order should not be overturned unless the record discloses a clear abuse of discretion. Railroad Commission v. Shell Oil Co., 146 Texas 286, 206 S. W. 2d 235; Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Texas 560, 99 S. W. 2d 263, 109 A.L.R. 1235; Harris County v. Bassett, 139 S. W. 2d 180, error refused; Scanlan v. Houston Lighting & Power Co., 62 S. W. 2d 537, error refused; Borden Company v. Local 133 of International Brotherhood of Teamsters, etc., 152 S. W. 2d 828, error refused; International Ladies Garment Workers Local No. 123 v. Dorothy Frocks Co., 95 S. W. 2d 1346; 24 Tex. Jur., Injunctions, § 253.

The test announced by this court is: "If the petition does

allege a cause of action and evidence tending to sustain such cause of action is introduced, then there is no abuse of discretion by the trial court in issuing the temporary injunction." Southwestern Greyhound Lines, Inc. v. Railroad Commission, supra. This case meets that test.

The opinion of the Court of Civil Appeals states:

"The evidence supports the findings of the trial court * * * that during the period of time that the picketing was in progress, some 31 incidents found by the trial court under its fact finding No. 12 did occur. From these findings and the evidence supporting them it is evident that the members of the appellant union and those acting with them followed different workmen on their way home from work and after first requesting them not to cross the picket lines, made vague and indefinite threats of violence to them. In particular, the Negro workers were told that it would be dangerous for any Negro to enter the premises of appellee, that if they did continue to cross the picket lines the union members and leaders had no control over 1700 other union members and could not be responsible for what might happen to them; a Negro employee was visited at his home at 9:30 P. M. by three unidentified white men and cautioned him that workmen crossing picket lines in other strikes had been hurt and if he continued to do so he might be hurt. Another was told that there was going to be some trouble and he should not go into the plant to work; others were told that if things here kept on going somebody would likely get hurt; others were told that if the strike went on further that things were going to get rough and that the union was going to have men from other sections of the state to come up to Lufkin and help them; others were told that they would be sorry if they went back to work and were called opprobrious names; another Negro was told that there was a big black snake loose in the Negro quarters and nobody knew where it would strike next. Because of these threats of violence many of the Negro workers refused to go back to work until escorts were provided for them by the appellee. Many of these conversations and threats took place at places away from the plant itself and some occurred at or near the homes of the workers. Some of them occurred in the late hours of the night."

In the light of the above and other similar facts the trial court found:

"* * * It was obvious to the court that the fear from these

episodes was still firmly imbedded in the minds of the men who testified as was evidenced from their demeanor and their conduct while testifying as witnesses; this evidence was especially obvious among the Negro witnesses who testified on behalf of the plaintiff. Inasmuch as many of the threats towards the Negro employees were veiled, the court knows as a matter of his judicial knowledge that Negroes of this type in this locality are of an ignorant and very superstitious nature and the court concludes therefrom that such veiled threats were especially effective in deterring them from further employment with the plaintiff during the process of the strike while the picket line was being maintained."

\*　　\*　　\*　　\*

"16.

"From the evidence as a whole, the court finds and concludes that inasmuch as the picketing of Texas Foundries, Inc., from January 9, 1951, to January 23, 1951, has been so accompanied by threats, coercion, intimidation and other unlawful conduct that any future picketing of any character will be in reasonable probability result in a continuation of such threats, coercion, intimidation and unlawful conduct and will in reasonable probability result in a crystalization of such conduct into actual physical violence. In part, the court bases this conclusion upon the personal conduct of some of the individual defendants while testifying as witnesses wherein they demonstrated an active, vigorous and belligerent attitude and upon the admitted inability of the defendants themselves to control the activities of other persons assisting them."

5, 6 The Court of Civil Appeals held that the acts of respondents and those acting with them, above outlined, were unlawful, but concluded that "we do not believe that it reasonably follows that even though all such unlawful acts of conduct be enjoined, that a peaceful picketing of the entrances of the appellee's plant, in such a manner as is guaranteed by law to strikers in a bona fide labor dispute, would result in future violence." The court does not hold that there was a clear abuse of discretion by the trial judge. What it holds is that in its judgment there will be no future violence if picketing is carried on under the modified injunction. It fell into the error of substituting its judgment for that of the trial judge. Such a substitution does not accord with the approved method of review of a temporary injunction. The appellate court cannot substitute its discretion for that of

the trial court. It has no independent discretion in reviewing such an order; its sole function is to determine whether there has been a clear abuse of discretion by the trial judge. While the trial judge in this case may have erred in his judgment as to what would be the result of future picketing, it cannot be said that this record discloses an abuse of discretion by him. We held in Railroad Commission v. Shell Oil Company, supra, that even though the district court erred in its conclusion on the applicable substantive law, it did not follow that that court abused its discretion in granting a temporary injunction to preserve the rights of the parties pending trial on the merits.

7   We observe here, as we did in connection with our ruling on the motion to dismiss, that respondents, as a practical matter, are not prejudiced by this ruling. The only effect of this opinion is to fix the costs of appeal. This being an interlocutory proceeding, our holding will be ignored if and when this case is tried on its merits. Counsel have ably briefed important questions of labor law, but we cannot decide them finally in this proceeding. If questions of that character are to be decided by the appellate courts, the parties should first try their cases on the merits and appeal from the order of the trial court granting or refusing a permanent injunction. We are aware that in certain counties of the state where the dockets are crowded there is often much delay in obtaining trials of cases, and that in some instances if an appeal is not prosecuted from an order granting a temporary injunction, that order, through the lapse of time, will accomplish the whole object of the litigation. Where that situation obtains and the whole object of the suit would be accomplished by the delay incident to an appeal, the trial judge should never grant a temporary injunction without at the same time arranging his docket so as to afford the defendants a trial on the merits without undue delay. It is error for a trial court to grant a temporary injunction, the effect of which would be to accomplish the object of the suit. To do so would be to determine rights without a trial. James v. E. Weinstein & Sons (Comm. App.), 12 S. W. 2d 959; Perry v. Stringfellow, 134 Texas 328, 134 S. W. 2d 1031; McMurrey Refining Co. v. State, 149 S. W. 2d 276, error refused. There is no claim that the trial court in this case would not have afforded respondents a prompt hearing on the merits.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

246

Opinion delivered April 9, 1952.

Rehearing overruled May 21, 1952.