**BRIARCROFT DEVELOPMENT COM-PANY et al., Appellants.**

v.

**John N. STONE et al., Appellees.**

No. 3241.

Court of Civil Appeals of Texas.

Waco.

June 16, 1955.

Rehearing Denied July 7, 1955.

Hamblen & Bobbitt, Boone & Heard, James C. Boone, Dow H. Heard, Houston, for appellant.

Robert L. Sonfield, Houston, for appellee.

McDONALD, Chief Justice.

This is an appeal from a temporary injunction enjoining Defendants from breaching certain restrictions in Briarcroft Addition, a highly restricted residential area in Houston. Plaintiffs are resident property owners in Briarcroft Addition. Defendants are: 1) Briarcroft Development Company, which dedicated the Addition and restrictions thereon, but which claims the right itself to *deviate* from the express terms of some of the restrictions; 2) Chuck Irwin Building Corporation, which seeks to build on lots of less width than the restrictions prescribe; and 3) R. L. Phillips, D. F. Biven, and S. R. Zuber, who are the Directors of the Briarcroft Company.

Plaintiffs sued for themselves and as representatives of all property owners in the Addition, and sought to enjoin Defendants from breaching Paragraph 6 of the restrictions, which provides: *"No dwelling shall be erected or placed on any lot or portion of one or more lots having a width of less than 75 feet at the minimum building setback line"*, and for a determination by the court of such building restrictions.

The record reflects that Defendant Briarcroft Development Company dedicated the Briarcroft Addition, the plat being recorded in Vol. 36 at page 8 of the Map Records of Harris County. Certain restrictions were promulgated and fixed upon each of the lots of the Addition and recorded in the Deed Records of Harris County, provisions of which pertinent to this case are:

Paragraph 6: *"No dwelling shall be erected or placed on any lot or any portion of one or more lots having a width of less than 75 feet at the minimum setback line."*

Paragraph 10: *Establishes the minimum setback line as that shown on the recorded plat of the Addition.*

Paragraph 2: *"No deviation from any of these restrictions will be permitted except by special written permission of Briarcroft."*

Defendant Chuck Irwin Building Corporation purchased various lots and fractional parts of lots from Defendant Briarcroft and was given permission by Briarcroft to construct residences on each of the fractional parts of lots and which are of less width than 75 feet at the minimum building setback line as shown on the recorded plat.

The record reflects that most of the lots in the Addition are rectangular in shape and are 75 to 100 feet in width at the front and rear and at the building setback line which is fixed on the recorded plat but is located about 25 feet behind the front boundary of the lot. There are some lots, however, which are inside corner lots, which are pentagon shaped and are approximately 90 to 100 feet in width at the building setback line, but which become wider further toward the rear of the lot. The following diagram demonstrates schematically the conventional lots as well as the pentagon shaped corner lots:

Schematic Diagram Section of

Briarcroft Addition

1. **Building Setback Line**

2. **Width at Setback Line Approx. 90 Feet**

3. **Corner Lot Width at Setback Line Approx. 90 Feet**

4. **Width of Corner Lot at New Setback Line Approx. 150 Feet**

Briarcroft sold the lots on a square foot basis. A corner lot, while not being more than 90 or 100 feet in width at the building setback line, contained as many square feet as two conventional lots, and therefore were quite expensive. For this reason corner lots were hard to sell. Because of this, Briarcroft gave permission to Defendant Chuck Irwin Building Corporation to redivide some of these corner lots, and in one instance to combine two lots within fronts of 92 and 85 feet, respectively, and then divide same into three lots of *57, 53,* and *67* feet frontage, respectively, at the minimum building setback line (as established by the recorded plat).

Defendant Briarcroft Development Company, as applied to the corner lots involved in this case, relying on Paragraph 2 of the restrictions (supra), without notice to any of the Plaintiffs or other lot owners in the Addition, and without filing any instrument pertaining thereto in the Deed or Map Records of the county, moved the minimum setback line rearward and then *angled* same so that there would exist a 75 foot width at the *new* building setback line. The width

at the minimum building setback line as prescribed by the recorded plat was 57, 53, and 67 feet, respectively, on the lots involved in this litigation, and was even less in some other instances.

Plaintiffs take the position that the term *"deviation"* in Paragraph 2 of the restrictions (supra) means that Defendants have the authority to detour only in *immaterial* respects from the written restrictions, and that to take action which will permit building on a lot with less than a 75 foot width at the building setback line on the recorded plat is not authorized. Defendants, on the other hand, contend that they can "deviate" from the *75 foot rule* prescribed in Paragraph 6 to the extent that they can authorize buildings to be constructed on lots of 53 feet or less, and that such action is simply a "deviation" which they have the power to grant permission for.

Defendant Chuck Irwin Building Corporation laid the foundation for a residence on one of these *redivided* lots which is considerably less in width than 75 feet at the minimum building setback line as recorded on the plat. Plaintiffs notified him that if he proceeded therewith suit would be brought against him. He nevertheless, and even after filing of suit, continued construction until enjoined by the Trial Court, at which time the building was 70% completed.

Plaintiffs by their suit sought to temporarily enjoin Defendants from *redividing* lots and from constructing or permitting construction on lots with less than 75 foot frontage at the minimum building setback line as shown on the recorded plat.

Trial was before the court without a jury, which granted the temporary injunction prayed for. The Trial Court filed Findings of Fact and Conclusions of Law summarized as follows:

### Findings of Fact

"1) This is a class suit.

"2) Briarcroft Addition was dedicated by plat filed in the Map Records of Harris County.

"3) For the purpose of constituting the Addition a high class restricted subdivision, the owners fixed certain restrictions thereon, which are covenants running with the land and are recorded in the Deed Records of Harris County.

"4) Section 2 of the Restrictions provides: 'No deviation from any of these restrictions will be permitted except by special written permission of Briarcroft.'

"5) Section 6 of the Restrictions provides: 'No dwelling shall be erected on any lot or portion of one or more lots having a width of less than 75 feet at the minimum building setback line as shown on the recorded plat.'

\* \* \* \* \* \*

"7) Briarcroft Development Company imposed upon many of the subdivided lots an additional minimum building setback line at which the lot is at least 75 feet in width, but the new line is farther back on the lot, is not the minimum building setback line referred to in Section 6 of the Restrictions, and the *new* minimum building setback line has no force or effect in determining whether or not a house may be built on the lot.

"8) A decrease of not more than 7% from the required minimum width of 75 feet at the original building setback line shown on the recorded plat is a 'deviation' from the Restrictions and is within the meaning of Section 2, but any greater diminishment in the width would materially diminish the frontage upon the street and would be a drastic change and departure from, and would be destructive of, the general plan and scheme established by the Restrictions.

"9) Defendant Chuck Irwin Building Corporation, at the time of this suit, was constructing a dwelling on a lot smaller than the restrictions call for, but such had progressed to such an extent prior to any notice to him of intention to sue, that its completion should not be enjoined.

"10) Defendant Chuck Irwin Building Corporation had actual notice on 27 April 1954 that Plaintiffs were vigorously protesting construction of the dwelling on the west part of Lot 20, Block 3, when only the concrete slab foundation had been laid, and on 6 May 1954 Plaintiffs filed this suit to enjoin such construction, which constitutes due diligence on the part of Plaintiffs; that at such time only $550 had been expended on the construction; that after notice and suit it continued with the construction, and should therefore be temporarily enjoined from further construction thereon.

"11) At the time of trial. of this suit the above house was approximately 70% completed.

"12) Defendant Chuck Irwin Building Corporation had written permission from Defendant Briarcroft to construct the above building.

\* \* \* \* \* \*

"The *Conclusions of Law* found that Defendants should be temporarily enjoined, pending final trial, as ordered in the order granting temporary injunction.

"The Trial Court found additional Findings of Fact, which are:

"1) Defendant Briarcroft Development Company has re-subdivided or permitted the re-subdivision of various lots and fractional parts of lots having a width materially less than 75 feet at the minimum building setback line shown on the recorded plat, the width of the street line being also drastically reduced, in some instances to 36 feet.

"2) Defendants have materially changed the location of the minimum building setback line from that shown on the recorded plat so that in practically every instance the changed lines run diagonally on the fractional parts of such lots and do not parallel the street lines or the original building setback lines, the changed building setback lines being so located on the fractional parts of the lots in question that there is a width of 75 feet.

"3) No re-subdivision of lots or change in the minimum setback line, or change in the original recorded plat was recorded in the records of Harris County.

"The Trial Court filed the *additional Conclusion of Law,* 'that the re-subdivision of such lots and change in the minimum setback lines constitutes more than a "deviation" from the recorded restrictions permitted by Section 2, and constitutes a drastic change and departure from the original lot lines shown on the recorded plat, and from the recorded restrictions, beyond the authority of Defendants.' "

Defendants appeal, contending: 1) That Paragraph 2 of the Restrictions, *"No deviation from any of these Restrictions will be permitted except by written permission of Briarcroft",* reserved to Briarcroft the unconditional right to permit deviations in the restrictions, and that relocating the building setback line and resubdividing the corner lots in question is within their authority and discretion, and does not constitute an unauthorized departure from the restrictions as promulgated and recorded. 2) That the general scheme of the Addition as set up by the plat and restrictions was abandoned and such was acquiesced in or waived by Plaintiffs. 3) That it would not be equitable to enjoin completion of the house 70% completed.

Plaintiffs contend that the resubdivision of the corner lots into smaller lots by Defendants completely changes, alters, and destroys the restriction that no house can be built on a lot with a width less than 75 feet at the minimum building setback line.

◼◼◼ The Findings of Fact of the Trial Court are amply supported by the evidence, and are not challenged by Defendants, and must be taken as correct by this court and be binding thereon. Thompson v. Larry Lightner, Inc., Tex.Civ.App., 230 S.W.2d 831, Er. Ref. N R E; Curry v. E. E. Stone

Lbr. Co., Tex.Civ.App., 218 S.W.2d.293, Er. Ref. N R E; Taylor v. Austin, Tex.Civ. App., 221 S.W.2d 933; Trahan v. Marvin Distributing Corp., Tex.Civ.App., 222 S.W. 2d 1021; Harrison v. Ingham, Tex.Civ.App., 223 S.W.2d 267. We believe that the facts as found by the Trial Court and as disclosed by the record justify the conclusion that the resubdivision of the lots by the Defendants and the change in the minimum building setback line constitutes more than a *"deviation"* from the recorded restrictions, and constitutes a drastic change and departure from the original lot lines shown on the recorded plat and from the recorded restrictions. Indeed, purchasers of lots in this Addition purchased in reliance upon the plat dedication and upon the recorded restrictions that houses would not be built on lots with less than a 75 foot width at the building setback line. The salesmen used this restriction as a selling point in persuading purchasers to buy a lot in Briarcroft Addition.

Paragraph 6 of the Restrictions is clear and unequivocal: *"No dwelling shall be erected on a lot having a width of less than 75 feet at the minimum building setback line."* The Trial Court found against the Defendants' contention that to reduce the frontage of a lot from 75 feet to lesser width, (and down to *28 feet,* as is disclosed was done in one instance), was simply a deviation permitted by Paragraph 2. We think Briarcroft's action in setting rearward the minimum building setback line to be a subterfuge to nullify Section 6 of the Restrictions. We believe that on this record the Trial Court properly granted the temporary injunction prayed for.

 Ordinarily the granting or refusing of a temporary injunction rests within the sound discretion of the Trial Court, and where the injunction is necessary to preserve the jurisdiction of the court or the status quo, such discretion should ordinarily be exercised in favor of granting the writ, and when granted, unless it appears from the record that the Trial Court has abused its discretion, its action must be upheld. First Trust Joint Stock Land

Bank of Chicago v. Hayes, Tex.Civ.App., 90 S.W.2d 331; 24 T.J. 121 et seq.

In the case at bar Defendants had nearly completed one house on a lot of undersized frontage, which the Trial Court refused to enjoin the completion of; and were commencing another house on a fractional undersized lot, which the court did enjoin the completion of. (Indeed the record shows Defendants tried to complete this house after notice of this suit and prior to being enjoined herein).

 The Trial Court having exercised its discretion and having determined that a temporary injunction should be granted, we cannot say that the Trial Court abused its discretion. On the contrary, it appears from the record before us that the Trial Court could have come to no other conclusion than the one reached. See: Texas Foundries, Inc., v. International Moulders & Foundry Workers Union, 151 Tex. 239, 248 S.W.2d 460; Railroad Commission v. Shell Oil Co., Inc., 146 Tex. 286, 206 S.W. 2d 235.

As to Defendants' 2nd and 3rd contentions—we find no evidence that the general scheme of the Addition was abandoned or that the changes sought to be made by Defendants were acquiesced in or waived by Plaintiffs. All of Plaintiffs' conduct is to the effect that as fast as they learned what Defendants were doing and trying to do, that they did and have done all within their power to stop—and have stopped Defendants. As to the house now 70% complete —the Trial Court found that Defendants knew of this lawsuit at a time when only $550 was expended on same. They could have stopped construction at that time, but they chose to do otherwise and continued construction until temporarily enjoined by the Trial Court. We cannot say that under the circumstances the Trial Court has abused the broad discretion with which it is clothed.

All of Defendants' points have been carefully considered and are overruled as are the contentions made thereunder, and the judgment of the Trial Court is accordingly Affirmed.