**Otto L. DAVIS and W. J. Shields, Appellants,**

v.

**RINEHART OIL NEWS COMPANY, Appellee.**

**Otto L. DAVIS and W. J. Shields, Appellants,**

v.

**Keith ANDERSON, Appellee.**

Nos. 5541, 5542.

Court of Civil Appeals of Texas.

El Paso.

Jan. 10, 1962.

Bill Hart, Midland, for appellants.

Milton L. Bankston, W. B. Browder, Jr., Stubbeman, McRae, Sealy & Laughlin, Midland, for appellees.

CLAYTON, Justice.

These two cases are companion injunction suits with prayer for damages filed on May 4, 1961 in the District Court of Midland County by the appellants against the respective appellees, which cases were con-

solidated in the trial court on hearing for issuance of temporary injunction. Cause No. 5541 in this court was docketed as No. 15,825 in the trial court, and cause No. 5542 was numbered 15,826 in the trial court. In each application for temporary injunction appellants contended that the appellees, each of whom published individual oil news reports in competition with that published by appellants, were taking, using and republishing items from appellants' publication, and asked that they be restrained from so doing in any form or way. Upon hearing, temporary injunction was denied, from which order of the court the appellants brought this appeal.

The only witness appearing at the hearing was Otto L. Davis, one of the appellants. He testified that he and appellant W. J. Shields, were in partnership in the publication of a specialized oil news report entitled "New Locations", the primary purpose of which was to acquaint the oilfield supply companies of the West Texas and Southeastern New Mexico area with new drilling locations and activities, and further, with the name of the operator, the drilling contractor when known, and the status of the location. There are three issues of the publication—two from Midland, Texas which are placed in the mail on Saturday of each week, and the third mailed from Hobbs, New Mexico on Tuesday of each week. The information for these publications, relative to location notices, is obtained from records of the Texas Railroad Commission offices in Midland and San Angelo, Texas, and from the State Oil Conservation Commission offices and the United States Geological Survey offices in Hobbs and Artesia, New Mexico. Appellant Davis testified that the balance of the information contained in his publications, such as relates to the drilling contractor, status of the operation, etc., is gathered by contact with the particular oil operators involved in the new locations. He further related that appellee Rinehart Oil News Company published Ira Rinehart's Oil Report (Ira Rinehart's Location Service), and appellee

Keith Anderson published the Anderson Oil Report, which were publications similar to "New Locations" and disseminated in approximataely the same area.

In the petitions filed by appellants against each of the appellees, practically identical allegations asserted that on or about June 7, 1957 each appellee began willfully to obtain copies of appellants' reports by fraudulent and secret means and had taken certain information from such reports and had, since said date, used various information obtained by appellants at the expense of appellants for the use of each of the appellees in his respective report. In support of these allegations, appellant Davis introduced as his Exhibit One a copy of his publication for West Texas Railroad Commission District 8 covering the period from April 17 to April 24, 1961, consisting of seven pages. As Exhibit Two he introduced a "dummy" copy of page 2 of Exhibit One in which the name of a drilling contractor had been changed from the record name of "Ray Smith Drilling" to an imaginary name of "Mabee Drilling". This dummy copy of Exhibit One with the substituted name of "Mabee Drilling" on page 2, had been prepared by appellants for and sent to only one unidentified subscriber to appellants' report. As far as we are able to ascertain from the record, no attempt was made by Davis to show that this particular item of misinformation had fallen into the hands of appellees by "fraudulent and secret means" or otherwise, or had been used by either of appellees in his respective report.

However, as his Exhibit Three, appellant Davis introduced a copy of "New Locations" for southeast New Mexico for the period of April 19 to April 26, 1961 in which (on page 2 of said Report) appeared the name of Kincaid & Watson as the drilling contractors for a McCoy & Stevens location in Eddy County, New Mexico. Kincaid & Watson are described by Davis as the actual drilling contractors. In Exhibit Four, made up in all other respects as a true issue of this publication for the same area

and period of time, the name of the drilling contractor on this location was listed under the fictitious name of Donnelly Drilling Company. This was done, Davis states, at his instruction, and was sent to one (unidentified) customer only.

In appellants' Exhibit Five, a copy of Ira Rinehart's Location Service for April 27, 1961, the same item of misinformation as to the drilling contractor on the McCoy and Stevens location appears. In appellants' Exhibit Six, consisting of a copy of a page from the Anderson Oil Report for the same date and location, the incorrect name of Donnelly as the drilling contractor appears.

The obvious purpose of this testimony and these exhibits was to show that appellees had, in fact, by "fraudulent and secret means" taken certain information obtained by appellants at their expense and converted the same to appellees' own use. It is this alleged practice that appellants sought to enjoin. No testimony was offered by appellees in their behalf.

At the conclusion of the hearing the trial court entered identical orders denying the appellants' applications for temporary injunctions in each case.

■ Appellants present in this court several "Assignments of Error" which properly should have been designated Points of Error. For purposes of clarity in this opinion, however, reference will be made to appellants' "assignments" as Points of Error. Since most of them relate to the merits of the controversy in respect to appellants' rights to recover in damages for the alleged usurpation of their property, and do not relate to the rights of injunctive relief, which was the subject matter of the hearing, only the latter rights will be considered here. Miller v. Texsteam Corp., Tex.Civ.App., 327 S.W.2d 465. Appellants' Points of Error numbers One, Two and Three are accordingly overruled.

Appellants' Point of Error number Four reads as follows: "The trial court erred in

refusing to grant the temporary injunction to maintain the status quo pending the trial of the case on the merits."

■ It must be observed at the outset that the only evidence adduced by appellants in support of their application for temporary injunction was that in each of appellees' publications, published the day after that of appellants, the same item of misinformation contained in appellants' "dummy" copy was inserted. This "dummy" copy was prepared for, and sent to, one of appellants' subscribers. This subscriber is unnamed in appellants' testimony, and no connection between him and either of the appellees is disclosed. We feel that this evidence falls short of that necessary to support appellants' allegations that appellees had willfully and by fraudulent and secret means taken information from appellants' report, or that such information had been obtained by appellants at their expense.

But what impresses us most in connection with this Point of Error relative to maintaining the status quo between the parties is the assertion in appellants' petitions that the alleged wrongful practice of appellees had begun on or about the 7th day of June of 1957, and had continued since said date up to and including the filing of the petitions herein on May 4, 1961. If, under these circumstances, the order of the trial court refusing to grant a temporary injunction had disturbed the status quo, such order would in all likelihood, have been error on the court's part. 24–A Tex.Jur. (Rev.) 29, Injunctions, ¶15; Burge v. Dallas Retail Merchants Ass'n, Tex.Civ.App., 257 S.W. 2d 733. However, we feel that the trial court's orders in the instant cases preserved, rather than changed, the status quo between the parties, until a determination of all issues between them could be had by a trial on the merits.

■ The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exer-

cised its order should not be overturned unless the record discloses a clear abuse of discretion. Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union et al., 151 Tex. 239, 248 S.W.2d 460 (and cases therein cited).

Finding no such abuse of discretion on the part of the trial court, appellants' Point of Error Number Four is overruled, and the order of the trial court in each of the consolidated cases is affirmed.