**AIRKEM OF NORTH TEXAS, INC.,**
Appellant,

v.

**B. Monroe LOVELACE, Appellee.**

No. 16510.

Court of Civil Appeals of Texas.

Dallas.

Jan. 29, 1965.

Rehearing Denied Feb. 26, 1965.

Irion, Cain, Cocke & Magee, Dallas, for appellant.

Ross H. Scott, Dallas, for appellee.

WILLIAMS, Justice.

Airkem of North Texas, Inc. (hereinafter called Airkem) sought a temporary injunction in the district court to restrain a former employee, B. Monroe Lovelace, from violating the terms of a restrictive covenant contained in a written agreement executed by Airkem and Lovelace on December 17, 1963. Lovelace answered with a general denial and plea of no consideration for the written agreement relied upon by plaintiff. The trial

court denied Airkem's application for interlocutory temporary injunction, and this appeal followed. Both parties in their briefs cite the recent case decided by this court, John L. Bramlet & Co. v. Hunt, Civ. App., 371 S.W.2d 787, wr. ref. n. r. e., wherein, *inter alia*, we said:

> "It is well settled that in appeals from interlocutory orders in injunction cases the narrow question is whether the trial court abused its discretion in entering the order appealed from. Therefore, the order of a trial court in granting or in refusing to grant a temporary injunction will be reversed only when a clear abuse of discretion is shown. (Citing authorities) However, it is equally well settled that if the facts are undisputed and only questions of law are presented, it does constitute an abuse of the trial court's discretion to fail properly to apply the law to the facts. (citing authorities)"

Appellant Airkem contends that we should reverse the trial court's order refusing the temporary injunction because of its failure to apply the undisputed facts to the law of the case. Appellee responds with the contention that the facts are not undisputed and that the trial court did not abuse its discretion in entering the order appealed from. We agree with appellee and affirm the judgment.

Only two witnesses testified at the hearing before the district judge. Both were interested witnesses. Appellant's president, Damon Shipp, testified that Airkem is a Texas corporation engaged in the business of furnishing and applying chemicals for the purpose of removing the odor of smoke from buildings, upholstery, clothes, automobiles and other objects following a fire, in a number of counties of North Texas, including Dallas County, under a franchise granted it by Airkem, Incorporated, of New York. On May 1, 1962 appellee Lovelace was employed by Airkem as a salesman under an oral employment contract. Lovelace continued to operate under this oral contract for a period of one year. On May 1, 1963, under another oral agreement between appellant and appellee, appellee was promoted to sales manager and made superviser of appellant's Smoke Odor Removal Division. Shipp testified that both oral contracts were on a "month to month" basis. He also said that on the occasion of each oral contract Lovelace agreed verbally that he was not to compete with Airkem for a period of two years after quitting or being fired. Shipp said that had Lovelace not agreed to this he would not have retained him in the employ of Airkem. During the first part of December of 1963, Shipp asked Lovelace to enter into a written agreement and on December 15 or 16, 1963 Shipp demanded that the agreement be signed by Lovelace. Such agreement, being dated December 17, 1963, was signed by both Shipp and Lovelace and contained, *inter alia*, a statement to the effect that Lovelace would not engage upon, directly or indirectly, the same or similar type of business in the area covered by Airkem's franchise in North Texas, for a period of two years following the date of severance of employment. This instrument does not refer to the prior oral contracts of employment. Shipp testified that if Lovelace had declined to put the agreement in writing he would have fired him that day and would not have continued his employment. On April 30, 1964 Lovelace's employment with Airkem was terminated by appellant. Shipp related that following appellee's severance from Airkem he had entered into a competitive business of his own in the same territory. He testified that during the month of June 1964, being the only full month after the date of the hearing in which appellee had been in competition with appellant, appellant's income from Smoke Odor Service was only $1,607.49 whereas the same month in 1963 it was $3,290.79, representing approximately a 50 per cent decrease for that particular month. Shipp opined that if Lovelace was permitted to continue to compete with appellant that appellant would suffer irreparable losses.

Lovelace testified concerning his two verbal contracts of employment with Airkem. He said that the two verbal contracts were on a "year to year" basis rather than a "month to month" basis.

Relating to the question of an agreement not to compete, and especially with reference to the written agreement of December 17, 1963, Lovelace testified that the first time there was ever a discussion concerning such a restrictive covenant was when Shipp asked him to sign the agreement on December 17, 1963 and that the only reason he executed such agreement was at Shipp's request so that he, Shipp, could use such agreement to influence other salesmen to sign a similar agreement. Thereafter, a few days prior to the termination of the one year's verbal agreement, he asked Shipp if he was going to renew his contract whereupon Shipp advised him that the contract would not be renewed and he was discharged.

From this summarization of the material evidence it is quite apparent that rather than being uncontroverted, as contended by appellant, the testimony was directly conflicting in many material respects. This renders the case entirely different from Bramlet, supra. In Bramlet the testimony was uncontroverted that the original employment contract contained the restrictive covenant; that it was mutually understood by both parties that there was a restrictive covenant; and that both parties knew and understood that unless the employee executed the restrictive covenant he would not be employed. Such is not the case under the testimony related above. Lovelace had been employed originally under a verbal agreement and the same had been renewed at the end of one year with another verbal agreement. While Shipp testified that he would not have employed Lovelace had he not agreed to a restrictive condition, there is no evidence whatsoever that such understanding on Shipp's part was ever communicated to Lovelace. To the contrary, Lovelace testified that

the first time he ever discussed the restrictive covenant was when Shipp asked him to sign the agreement on December 17, 1963 as a part of a scheme or device to persuade other salesmen to execute a like agreement. Under Lovelace's testimony there was no consideration whatsoever for the execution of the December 17, 1963 agreement.

In addition to this the testimony is conflicting as to the issue of irreparable damage to appellant. Appellant nowhere alleges that appellee is insolvent and the testimony is clear that appellee does have some property subject to execution in the event of judgment against him. Furthermore, Shipp's testimony as to loss of profits during the one-month period following Lovelace's separation from the company is vague and indefinite. On cross-examination he conceded that profits varied from month to month depending upon the number of fires. From this the court could have reasonably concluded that the 50 per cent decrease in profits for the month of June 1964 was not proximately caused by the invasion of Airkem's business by Lovelace.

We have carefully considered the entire record in this case and from such it is quite obvious to us that the trial judge has not transgressed that large area of discretion wisely vested in him by the law in such cases. The trial judge saw and observed the witnesses and heard their testimony. From this he concluded to believe Lovelace's theory and not that of Airkem. We cannot say that the trial judge abused his discretion in denying the issuance of the temporary injunction. Texas Foundries, Inc. v. International M. & F. W. Union, 151 Tex. 239, 248 S.W.2d 460; Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549.

■ Appellant's second point relates to the court's refusal to allow appellant to introduce evidence relating to training imparted to appellee by appellant prior to the execution of the written agreement of De-

cember 17, 1963. We do not think the court committed error in this connection. Appellant's pleading was based solely upon the written contract and not upon any verbal agreement. The trial was before the court, without a jury, and we are to assume that the court considered only material and admissible evidence in arriving at his conclusion to deny the relief sought. Moreover, any error in refusing to permit such evidence is harmless since appellant has not demonstrated that such refusal is reasonably calculated to have resulted in the rendition of an improper judgment by the trial court. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.

Affirmed.