**Murray H. COHEN et ux., Appellants,**

v.

**A. J. LEWIS, Trustee, et al., Appellees.**

**No. 15211.**

Court of Civil Appeals of Texas,
San Antonio.

Sept. 5, 1973.

Rehearing Denied Oct. 10, 1973.

McGown, McClanahan & Hamner, San Antonio, for appellants.

Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellees.

BARROW, Chief Justice.

This is an appeal from an order denying appellants' application for a temporary injunction to enjoin foreclosure of a deed of trust lien on a warehouse located in San Antonio. Appellants concede that the note which is secured by the deed of trust is in default, but seek to restrain such foreclosure pending disposition of a suit pending in the United States District Court for the Southern District of New York, wherein it is urged, among other claims, that this note is not enforceable.

The simple legal proposition of foreclosure of a deed of trust securing a delinquent note is made very complex by the multipartied transactions behind said note. This background was not fully developed in the limited hearing in the trial court; however, a brief resume is necessary to understand the nature of this suit. Appellee, D. H. Overmyer Co., Inc., of Ohio, is a private corporation, which with several subsidiary corporations including appellee, D. H. Overmyer Co., Inc., of Texas, owns extensive real estate holdings throughout the United States with warehouse buildings located on same. Some of these warehouses are operated by Overmyer, some are leased, and some are sold under a lease-back arrangement.

In 1966, Overmyer went heavily in debt and as a result thereof, commenced a sell and lease-back program to improve its cashflow position. At the time of this hearing, Overmyer had sold property valued at over two hundred million dollars under a lease-back arrangement. Under such program, Overmyer actively solicited investors to buy warehouses from it under a lease-back arrangement, where the lease rental would earn the investors a substantial return on their money.

In 1971, Overmyer was contacted by a California brokerage firm in regard to purchasing warehouses under such an arrangement. As a result of this contact, Overmyer subsequently commenced negotiations with Teratron General Corporation, a California Corporation, which led to an investment contract executed on October 21, 1971. The officers of Teratron formed Investors Trust of America (ITA) to purchase five warehouses including the one in question located in San Antonio, which was owned by Overmyer through its Texas subsidiary. The purchase price was approximately $2,200,000 on the entire contract. Since ITA had only about $100 in assets, it planned to raise the money through a public offering of shares of its stock. This would take some time, so it was necessary to secure interim financing. Alison Mortgage Investment Trust furnished about 1.5 million dollars of the interim financing and took a second mortgage on the properties.[1] The remaining sum of about $700,000 was furnished by Overmyer, and it took a third mortgage to secure said note.

The Alison Group was to receive in excess of ten per cent interest on its note plus additional "points," and in order to avoid a possible violation of the California usury statute, Alison required Teratron/ITA to form Equity Corporation of Colorado, a Colorado Corporation, to take

---

1. There is a first mortgage on the properties which was apparently given to pay for construction of the warehouses, but said mortgage is not involved in this suit.

title to the real estate and execute the various notes.

All necessary instruments were executed in accordance with this scheme, including a note from Colorado Equity to Overmyer, of Texas, in the principal sum of $142,159.88 secured by a deed of trust to appellee, A. J. Lewis, trustee, on the San Antonio warehouse. ITA ran into difficulties in connection with its planned public offering of stock in that the Securities Exchange Commission (SEC) refused to authorize such issuance on the basis of the limited financial information furnished by ITA regarding Overmyer. Overmyer refused to furnish an audited financial statement for use by the SEC and the principal dispute between the parties in the suit on the merits pending in New York is whether Overmyer was obligated to do so under the contract of October 21, 1971. Subsequent negotiations between the parties were unsuccessful, and by October, 1972, ITA's plan for a public offering had collapsed. Subsequently, Teratron, ITA, and Colorado Equity assigned all of their interest in the October 1971, contract to appellants, Cohen and wife. Two extensions were granted by Overmyer on the notes due it, but both have expired and the note secured by the San Antonio warehouse is now in default.

It is seen from this record, and in fact it is conceded by appellants, that the sole purpose of this suit is to restrain foreclosure proceedings pending final disposition of the case on the merits in the United States District Court of New York. All the parties have appeared there and are now before said court. In fact, at one time all parties agreed that no action would be taken in the Texas suit, before a designated time. This period has now expired, and we are not now aware of the current status of the New York case.

The rule is well settled that the decision of the trial court in refusing to grant a temporary injunction will not be reversed unless we determine that the trial court has been guilty of abuse of discretion or has failed to apply the law correctly to undisputed facts. Manning v. Wieser,

474 S.W.2d 448 (Tex.1971); Texas Foundaries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (1952). We cannot say from the limited, but highly disputed, record before us that appellants established the invalidity of the lien in question as a matter of law.

It is seen that the New York court has jurisdiction over all parties, including some who are not before the Texas court, and thus the New York court has full power to preserve the subject matter pending final disposition of the suit if it deems such action necessary. On the other hand, the Texas court would have no control over the case on the merits and it would unnecessarily congest the docket of the Texas court to merely preserve the subject matter of a suit pending in another jurisdiction. We cannot say that the trial court abused its discretion in refusing to grant a temporary injunction in this situation.

The judgment is affirmed.

CADENA, Justice (concurring in the result).

I concur in the result.