

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00397-CV

———————————————

JUDY DE LA GARZA AND THOMAS M. DE LA GARZA, Appellants

V.

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE
CHALET SERIES IV TRUST, Appellee

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 14-04892-367

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION[1]

This is the second appeal in this litigation. *See De La Garza v. Bank of New York Mellon*, No. 02-17-00427-CV, 2018 WL 5725250 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.). At issue in this appeal is the trial court's summary judgment for Appellee U.S. Bank Trust National Association (Bank), as Trustee of the Chalet Series IV Trust, on its counterclaim for judicial foreclosure against Appellants Judy De La Garza and Thomas M. De La Garza. In three points, Appellants contend that the trial court erred by granting summary judgment because Bank lacked standing to pursue its counterclaim, because the summary judgment evidence raised material fact issues, and because Bank's counterclaim was legally impermissible. Because we conclude that Bank established its entitlement to judgment, we affirm.

## Background

In 2006, Judy executed a home equity note (the Note) with First Horizon Home Loan Corporation. The Note was secured by a deed of trust (the Lien), which was executed by both Appellants, on Appellants' Denton County property. Appellants defaulted in 2008. The then-lienholder made multiple attempts to foreclose through a

---

[1]This court previously dismissed Appellants' appeal for want of jurisdiction. We subsequently granted Appellants' motion for rehearing and reinstated the case on the court's docket. *See De La Garza v. U.S. Bank Tr. Nat'l Ass'n*, No. 02-20-00397-CV, 2021 WL 1134451, at *1 (Tex. App.—Fort Worth Mar. 25, 2021, no pet.) (mem. op. on reh'g.).

Civil Procedure Rule 736 application, but each time Appellants filed suit to stay the proceeding. *See* Tex. R. Civ. P. 736.1, 736.11.

In 2013, the Bank of New York Mellon (BONY), as trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates (FHASI 2006-3),[2] filed another Rule 736 application, alleging that it had become the party entitled to foreclose. The trial court signed an order granting the application, and Appellants filed the underlying suit to stop the foreclosure. They alleged claims for breach of contract, wrongful foreclosure, and violations of the Texas Debt Collection Act. BONY counterclaimed for judicial foreclosure under Civil Procedure Rule 309. *See* Tex. R. Civ. P. 309. The trial court granted no-evidence summary judgment for BONY on Appellants' claims and traditional summary judgment for BONY on its foreclosure counterclaim, and Appellants brought the first appeal. *See De La Garza*, 2018 WL 57725250, at *1.

After Appellants filed the first appeal, BONY transferred the Note and Lien. This court affirmed the trial court's judgment for BONY on Appellants' claims against it but reversed the judgment on BONY's foreclosure counterclaim because of an

---

[2]The full name of the petitioner as listed in the application was "The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-through Certificates Series (FHASI 2006-3), by First Horizon Home Loans, a Division of First Tennessee Bank National Association, Master Servicer, in its Capacity as Agent for the Trustee under the Pooling an[d] Servicing Agreement."

unexplained gap in the Note's chain of assignments. *De La Garza*, 2018 WL 5725250, at \*9.

The loan instruments were subsequently assigned to MTGLQ Investors, L.P., and on remand, the trial court granted BONY's motion to substitute MTGLQ as the counter-plaintiff. Months later, MTGLQ moved to substitute Bank as counter-plaintiff because MTGLQ had transferred to Bank possession of the original Note indorsed in blank as well as MTGLQ's interest in the Lien. The trial court granted the motion.

Bank filed an amended counterclaim for judicial foreclosure under Rule 309 and moved for summary judgment.[3] Included with its summary judgment evidence were the affidavit of Bank's lawyer stating that Bank holds the Note and a copy of the Note indorsed in blank by the original lender, First Horizon. The trial court granted Bank's summary judgment and then signed a final judgment, which incorporated both the summary judgment for Bank and the no-evidence summary judgment on Appellants' claims against BONY that had been affirmed in the first appeal.

---

[3]Although styled "Counter-Plaintiff's Motion for Summary Judgment," the motion is more accurately described as a motion for partial summary judgment because it asked the trial court to grant the motion as to Bank's right to foreclosure and to then hold an evidentiary hearing to determine attorney's fees and the specific amount of the "debt, damages[,] and costs" under Rule 309. *See* Tex. R. Civ. P. 309; *Jones v. N. Am. Acceptance Corp.*, 442 S.W.2d 492, 494 (Tex. App.—El Paso 1969, no writ) (stating that judicial foreclosure judgment should state "how much should be collected by means of the foreclosure"). The trial court signed its final judgment after such a hearing. On appeal, Appellants do not complain of the court's rulings on any matters determined at the hearing.

4

## Discussion

## I. Appellants' standing arguments fail.

Under their first point, Appellants challenge Bank's standing to pursue its judicial foreclosure counterclaim. For a party to have standing to assert a claim, the party must have a concrete injury. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018).

Appellants argue that Bank "bases its claim of standing as well as its counterclaim for judicial foreclosure on relief improperly granted to . . . [BONY]" and that because BONY "forfeited [its] standing" during the first appeal by transferring its interest in the Note and Lien, Bank cannot now "claim the benefit of" this court's opinion and judgment in the first appeal. Appellants relatedly argue that because "BONY lost its interest and lacked standing to pursue its appeal" during the first appeal's pendency, "nothing could be founded on BONY's claims going forward." They cite *Texas Foundries v. International Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 461 (Tex. 1952), to argue that because BONY allegedly lost standing during the first appeal, "[t]he necessary consequence . . . is vacation of" the relief BONY had been granted on its counterclaim, "which necessarily means that [Bank] cannot benefit from any relief granted on the ephemeral foundation of BONY's counterclaim."

*Texas Foundries* addressed whether the Texas Supreme Court should vacate lower court orders relating to a temporary injunction when the case became moot on appeal. *Id.* It did not discuss standing. In any case, in the first appeal, we reversed the judgment on BONY's foreclosure counterclaim. *See De La Garza*, 2018 WL 5725250, at *10.

5

Consequently, after remand, Bank could not and did not benefit from that judgment, and Bank did not base its standing on the relief that had previously been granted to BONY. Instead, Bank filed an amended counterclaim and a summary judgment motion based on its own entitlement to foreclose.

Appellants also rely on *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001), and *El Caballero Ranch, Inc. v. Grace River Ranch, L.L.C.*, No. 04-16-00298-CV, 2018 WL 3369958, at *2 (Tex. App.—San Antonio July 11, 2018, no pet.) (mem. op.), to support their argument that BONY lost its standing during the first appeal. Both cases discussed the requirement that a plaintiff have standing at all stages of a case, including on appeal. Because Appellants were the parties seeking appellate relief in the first appeal, they needed to show standing to do so. *See El Caballero Ranch*, 2018 WL 3369958, at *2. BONY became the appellee by virtue of being a party to the judgment below against whom Appellants raised points of error in their brief. *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.). BONY, however, did not seek relief in the first appeal and thus had no need to prove its standing to pursue appellate relief. As for its remaining the proper appellee throughout the appeal, Appellants do not explain why BONY was not the proper appellee in the first appeal, at least as to the judgment on Appellants' claims against it—the part of the judgment that survived appeal.

Further, Appellants do not adequately explain why it matters for this appeal whether BONY—a party not involved in this appeal or in the judgment from which

6

the appeal was taken—maintained standing throughout the first appeal. The closest argument on this point that we discern in their brief is their argument that because "BONY's counterclaim was mooted"[4] by its transfer of the Note and Lien during the first appeal, that counterclaim was "not subject to amendment by [Bank], and there is no basis for [Bank] to have proceeded to summary judgment." We interpret this assertion as an argument that, even if MTGLQ (and subsequently Bank) had become the party with standing to pursue foreclosure, the trial court could not permit MTGLQ to be substituted as counter-plaintiff or later permit Bank to be substituted in MTGLQ's place and that Bank therefore could not file an amended counterclaim. In other words, to pursue foreclosure, Bank had to file a new, separate lawsuit rather than be substituted as counter-plaintiff in the existing one. However, Appellants do not support this contention with any authority, general statement of the law, or legal analysis. *See* Tex. R. App. P. 38.1(i). As we discuss below, Bank's summary judgment evidence established that it was the proper party to enforce the Note.[5] *See* Tex. Bus. & Com. Code Ann. § 3.203 (providing that an instrument's transfer vests in the transferee any right the transferor had to enforce the instrument); *Woodhaven Dr. 1401 Land Tr. v.*

---

[4]A case is moot when the court's actions cannot affect the parties' rights. *Pinnacle Gas Treating, Inc. v. Read*, 104 S.W.3d 544, 545 (Tex. 2003). There is no dispute that the trial court's actions after remand could and did affect the rights of Appellants and Bank with respect to the dispute between them.

[5]Appellants do not argue that Bank failed to show its connection to the Lien.

*Citibank, N.A.*, No. 05-17-01393-CV, 2018 WL 6629586, at \*5 n.1 (Tex. App.—Dallas Dec. 19, 2018, no pet.) (mem. op.) (noting that trial court had permitted Citibank, N.A. to substitute as plaintiff in suit originally filed by Bank of America, N.A.). We overrule Appellants' first point.

## II. Appellants' evidentiary challenges fail.

Under Appellants' second point, they claim that Bank's summary judgment evidence did not establish its right to judicial foreclosure. Their arguments under this point are without merit.

Most of Appellants' arguments relate to Bank's proof of its right to enforce the Note. To obtain summary judgment on its Rule 309 counterclaim, Bank had to prove, among other elements, "the existence of and some privity to" the Note. *De La Garza*, 2018 WL 5725250, at \*7; *see also* Tex. R. Civ. P. 309. Appellants contend that Bank failed to prove this element.

> We previously explained how to prove a party's privity to a note:
>
> Testimony in an affidavit that an entity owns a note is sufficient to conclusively establish ownership even absent supporting documentation if there is no controverting summary judgment evidence. *First Gibraltar Bank v. Farley*, 895 S.W.2d 425, 428 (Tex. App.—San Antonio 1995, writ denied). And, a photocopy of a note attached to the affidavit of a holder who swears it is a true and correct copy is sufficient to prove the status of owner and holder of a note if there is no controverting summary judgment evidence. *Id.* However, an issue of material fact is present regarding ownership of a note when the summary judgment evidence presents an unexplained gap in the chain of title. *Id.* at 428–29.

*De La Garza*, 2018 WL 5725250, at *9. In the first appeal, BONY's summary judgment evidence included a copy of the Note with no indorsement, and the record did not include any assignment of the Note to BONY. Because no evidence showed BONY's status as holder or owner of the Note, BONY's own evidence showed an unexplained gap in the Note's chain of title to BONY, and BONY therefore failed to establish as a matter of law that it had the right to judicial foreclosure. *Id.* at *9–10.

In this appeal, however, Bank's summary judgment evidence includes a copy of the Note with a blank indorsement. *See Wininger v. U.S. Bank Nat'l Ass'n*, No. 05-20-00455-CV, 2021 WL 5121173, at *4 & n.7 (Tex. App.—Dallas Nov. 4, 2021, pet. denied) (mem. op.) (noting that an instrument indorsed in blank is payable to the bearer by transfer of possession). Bank also produced the affidavit of William Fogleman, corporate counsel for SN Servicing Corporation, in which he swore that

- SN loan records reflect that SN began servicing the loan on Bank's behalf on July 23, 2019 and is the current servicer;

- SN maintains electronic and hard-copy records of certain original loan documents for the mortgage loans that it services;

- in connection with his job duties, he has access to SN's loan records and has knowledge of how they are maintained, and he gained knowledge of the facts in his affidavit through review of those records;

9

- the loan records reflect that on November 18, 2019, SN sent the original collateral file for the loan, including the original Note, to Bank's law firm to hold on Bank's behalf for purposes of prosecuting Bank's counterclaim;

- Shellpoint Mortgage Servicing was the prior mortgage servicer, and Nationstar Mortgage LLC was the servicer before Shellpoint; and

- certain exhibits attached to the affidavit—such as letters to Judy informing her that loan's servicing had been transferred to SN—are true and correct documents as they exist in SN's records.

The copy of the indorsed Note was attached to the affidavit of Bank's attorney Daron Janis, in which he averred that

- he had personally seen the blue-ink-signature original of the Note in the loan's collateral file, which was in his firm's possession;

- he had seen that the indorsement by the original lender, First Horizon, was permanently affixed on the reverse side of the Note's last page; and

- he had faxed to SN Corporation a letter acknowledging his receipt of the original collateral file.

This evidence establishes that Bank is entitled to enforce the Note. *See* Tex. Bus. & Com. Code Ann. § 3.203; *Wininger*, 2021 WL 5121173, at *4 & n.7. There is no impermissible gap in the Note's chain of title.

Appellants make several challenges to this evidence. First, they argue that the version of the Note offered to support BONY's summary judgment motion in the first appeal is inconsistent with the version offered by Bank with its summary judgment motion, and, therefore, summary judgment for Bank was inappropriate. The only inconsistency identified by Appellants is that in the copy of the Note produced by BONY did not include an indorsement, whereas the Note produced by Bank was indorsed. Appellants do not challenge the indorsement's authenticity, and they do not explain why a party's possession of a note indorsed in blank is not sufficient to establish the party's status as the note's holder. The fact that, at a prior point in time, a different party produced a copy of the Note without an indorsement (or failed to copy the Note's indorsement page) while claiming ownership of the Note by assignment does not raise any questions about whether Bank possesses the original Note indorsed in blank. Whatever version of the Note BONY or prior servicers may have had in their possession in the past, Bank produced a copy of the Note that does contain the blank indorsement. We do not have a situation in which the party seeking foreclosure is relying on a note indorsed to a different entity, *see, e.g.*, *Jernigan v. Bank One, Tex., N.A.*, 803 S.W.2d 774, 776 (Tex. App.—Houston [14th Dist.] 1991, no writ), or in which copies of a note indicate that the entity claiming ownership has legal ownership of the note but the entity's representative's affidavit attests to beneficial ownership, *see FFP Mktg. Co., Inc. v. Long Lane Master Tr. IV*, 169 S.W.3d 402, 410 (Tex. App.—Fort Worth 2005, no pet.).

Appellants next argue that Fogleman's affidavit is conclusory as to SN's status as servicer. We disagree. Fogleman attested that he is SN's corporate counsel; that in that role, he has access to SN's loan records; that the loan records reflect that SN is the mortgage servicer and began servicing the loan on Bank's behalf on July 23, 2019, when loan servicing was transferred to SN from Shellpoint; and that SN had the loan's collateral file until it was sent to Janis. Fogleman thus provided the facts underlying his conclusion that SN is the mortgage servicer, and thus the affidavit is not conclusory.[6] *Kressenberg v. Nationstar HECM Acquisition Tr. 2015-2, Wilmington Sav. Fund Soc'y, FSB*, No. 02-18-00261-CV, 2020 WL 1808293, at *5 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.).

Appellants next challenge the declaration of A.J. Loll, vice president of Nationstar, which Bank attached to its summary judgment motion to establish Appellants' default. Loll executed the declaration in May 2017—that is, before SN became the mortgage servicer. Loll averred that at that time, Nationstar was the servicer and was servicing the loan on BONY's behalf. Appellants argue that "Nationstar is not a party to this suit," and Bank asserted in its summary judgment motion that "an entity

---

[6]Further, even if we concluded that this particular statement was conclusory and thus is not evidence that SN is currently servicing the mortgage, Appellants do not challenge the parts of Fogleman's affidavit in which he states that SN had possession of the collateral file with Appellants' loan documents and that he sent those loan documents to Janis, and, accordingly, the affidavit supports Janis's affidavit testimony that the file contains the indorsed Note.

other than Nationstar was the mortgage servicer of the Loan," and therefore Loll's affidavit should not have been considered. They then argue that Janis's affidavit should not have been considered because "only an actual servicer representative should be able to offer business records of such putative servicer."

Appellants cite no authority or legal analysis for the proposition that the current lender's attorney cannot offer affidavit testimony about records he has received from the current servicer or that only affidavits by parties may be considered in a summary judgment proceeding. Civil Procedure Rule 166a requires only that affidavits be made on personal knowledge, "set forth such facts as would be admissible in evidence," and "show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166a(f). Further, the evidence rules favor admission of relevant evidence, and relevant evidence is not limited to testimony from parties. *See* Tex. R. Evid 401, 403. We have already rejected Appellants' argument that Foglemen's affidavit was conclusory when it stated that SN is the current servicer, and Janis's and Fogleman's affidavits established that SN provided the loan files in its possession to Janis. Janis could testify about his personal knowledge of the file's contents. *See* Tex. R. Civ. P. 166a(f).

Appellants also complain that Loll's affidavit did not aver that he had personally inspected the Note and seen evidence of the Note's indorsement. That does not help Appellants because if Loll did not claim to have inspected the original Note and to have seen that the Note was not at that time indorsed, then Loll's affidavit does not

13

contradict Bank's evidence that the original Note in its possession was indorsed, and the affidavit does not raise any questions about the indorsement's authenticity.

In addition to disputing Bank's evidence regarding its entitlement to enforce the Note, Appellants also argue that Bank did not meet another requirement of proving its judicial foreclosure counterclaim; they contend that Bank was not entitled to summary judgment because the notice-of-default requirements of Property Code Section 51.002 were not satisfied.[7] However, as we have previously held in this litigation, that section applies only to nonjudicial foreclosure actions, and Bank sought judicial foreclosure. *See De La Garza*, 2018 WL 5725250, at *8 (stating Chapter 51 does not apply to Rule 309 proceedings); *see also Taj v. Highlander Cmty. Servs. & Inv., LLC*, No. 05-19-01172-CV, 2020 WL 2569941, at *5 (Tex. App.—Dallas May 21, 2020, pet. denied) (mem. op.) (stating that Section 51.002(d) does not apply to judicial foreclosure proceedings).

Finally, Appellants argue that "[t]he Best evidence of the Note is the Note itself" and that "Collin County courts have a local rule providing explicitly for the production of the original note and all allonges in any proceeding involving collection upon a

---

[7]Specifically, Appellants complain that when the prior mortgage servicer sent a notice of default, which is required by Subsection (d) of Section 51.002, it sent the notice to Appellants via their attorney rather than to their last known address, as required by Subsection (e). They do not dispute that they received the notice or raise any other complaint about the debt's acceleration. Bank counters that under Texas Rule of Professional Responsibility 4.02, the prior servicer properly sent the notice to Appellants' counsel rather than directly to Appellants and that, regardless, it did not have to prove compliance with Section 51.002.

promissory note."[8] Appellants do not cite to the local rules of Collin County, and in any event, this proceeding was tried in Denton County. For the reasons stated above, we reject Appellants' challenges to Bank's entitlement to enforce the Note. We overrule Appellants' second point.

## III. Bank's judicial foreclosure counterclaim was not barred.

In their third point, Appellants argue that Texas Rule of Civil Procedure 736.11(d) bars a lender from bringing a counterclaim under Rule 309 for judicial foreclosure in a suit by a borrower against the lender. This court has already rejected that argument. *See Kerr v. Bank of New York Mellon Tr. Co., N.A*, No. 02-20-00179-CV, 2021 WL 1421440, at *3–4 (Tex. App.—Fort Worth Apr. 15, 2021, pet. denied) (mem. op.). We therefore overrule Appellants' third point.

### Conclusion

Having overruled Appellants' three points, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  June 9, 2022

---

[8]In a reply to Appellants' summary judgment response, Bank's attorney noted that the trial court had decided to hear the motion on submission rather than to hold a live hearing due to the COVID-19 precautions in place, but the attorney stated that he was willing to bring the collateral file to the court for an *in camera* inspection of the Note with the parties and their counsel. The trial court apparently did not find such an inspection necessary.

15